## CHERTOFF et al. v. COMMISSIONER OF INTERNAL REVENUE.

### No. 10308.

Circuit Court of Appeals, Sixth Circuit.

April 7, 1947.

David Perris, of Cleveland, Ohio (Lawrence M. Rich, of Cleveland, Ohio, on the brief), for petitioners.

I. Henry Kutz, of Washington, D. C. (Sewall Key, Robert N. Anderson and I. Henry Kutz, all of Washington, D. C., on the brief), for respondent.

Before SIMONS, MARTIN and MILLER, Circuit Judges.

MILLER, Circuit Judge.

The petitioners, George J. Chertoff and his wife, Lillian R. Chertoff, filed separate petitions for review of orders of the Tax Court which upheld deficiency assessments of the Commissioner of Internal Revenue in income taxes for the calendar years of 1937, 1940 and 1941 with respect to George Chertoff in the total amount of $22,951.86, and with respect to Lillian Chertoff in the amount of $9,071.55   Under stipulation and

order the two petitions for review were filed under and proceed in this one case. The question involved is whether income from separate trusts created by petitioners, with identical provisions, for the benefit of their children was taxable to the petitioners under the rule announced in Helvering v. Clifford, 309 U.S. 331, 60 S.Ct. 554, 84 L.Ed. 788. Both the Commissioner and the Tax Court held the income from the trusts so taxable.

The facts are stipulated and are briefly stated as follows: The petitioners are residents of Shaker Heights, Ohio, and have three children, Garry, born in 1922, Arlyne, born in 1923, and Gertrude, born in 1925. George Chertoff is a chemist. In 1917, he caused the formation and incorporation of the Synthetic Products Company to which he transferred in exchange for 450 shares of its capital stock a formula which he owned for producing water-repellent powder necessary in the manufacture of rubber paint. Since about 1924, the Company has been a manufacturer of chemicals. On September 15, 1937, the Company had 900 shares of stock outstanding, of which George Chertoff owned 451 shares and Lillian Chertoff 449 shares. On September 15, 1937, George Chertoff executed three indentures of trust, one for the benefit of each child, then under 21 years of age. In all material respects the separate trust indentures are identical. In each trust George Chertoff and Lillian Chertoff were named trustees. In each trust George Chertoff transferred 150 shares of the Synthetic Products Company to the trustees.

On December 12, 1940, Lillian Chertoff executed three indentures of trust for the benefit of Garry, Arlyne and Gertrude respectively, then under 21 years of age. In each trust George Chertoff and Lillian Chertoff were named trustees, and in each instance she transferred 75 shares of stock of the Synthetic Products Company to the trustees. The terms of the trust indentures were in all material respects identical with those executed by George Chertoff in 1937, except that Lillian Chertoff was the settlor.

Each trust was irrevocable. Each trust provided—"The Trustees shall have and hold the corpus and invest the same, receive the income, rents, issues and profits arising therefrom and pay said income over to said (name of child) or his legal guardian without restrictions as to use or purpose, and upon his death to pay over the principal and any accumulation of income to such person or persons and in such shares and lawful estates as the said (name of child) may nominate and appoint by his Last Will and Testament, or other valid written instrument, and in default of the same to pay and transfer the same in equal shares to George J. Chertoff and Lillian R. Chertoff or the survivor of them. * * * The Trustees are Hereby granted the power and authority in their sole discretion to pay to the beneficiary hereunder or his legal guardian from the principal from time to time such sum or sums as said Trustees may deem advisable without restrictions as to use or purpose." Each trust provided that it would terminate (a) as the beneficiary became 30 years of age, or (b) upon the death of the beneficiary prior to his becoming 30 years of age. It was further provided that in the event of either of the trustees dying, resigning, or becoming incapable of acting, the surviving trustee would continue to act, and in the event of the death of the surviving trustee the Executor named in the Will of the settlor would act as trustee. Each trust provided that in the event the beneficiary should alienate or charge either the income or principal, or if by reason of any event happening such income would either wholly or in part cease to be enjoyed by him, then such income would immediately cease and the devise to such person of the principal sum shall be revoked and thereafter the trustees were to pay the principal and income to and for the benefit of the persons who would be entitled thereto under the trust if such beneficiary were dead. The trustees were given the authority, without order of Court, to invest all sums in their possession according to their absolute discretion in such ventures, securities, and real estate as they deemed for the best interest of the beneficiary, irrespective of any statutes, rules or practices of Chancery Courts, with the trustees having absolute discretion as to the terms, conditions and

694

rate of interest in respect to any such investment.

On December 13, 1937, George Chertoff contracted with the Synthetic Products Company to act as its sole and exclusive sales agent for a period of 10 years beginning January 1, 1938. Prior to that date the Company had made its own sales directly. During the years 1938, 1939 and 1940, sales of the corporation's products were made a price slightly in advance of cost to George Chertoff doing business as "Synthetic Products Sales Company." His net profits as such sales agent were $8,985.70 in 1938, $13,810.94 in 1939 and $23,484.44 in 1940, which was in addition to his salary.

On December 11, 1940, the net assets of the Synthetic Products Company were sold to George Chertoff. The corporation then was liquidated. On December 12, 1940, a partnership agreement was executed between George Chertoff, Lillian Chertoff and themselves as Trustees for each of the three children, effective January 1, 1941, and continuing for a period of 10 years unless sooner terminated by death or other cause. George Chertoff contributed to the partnership his skill and experience in the business, the right to the use of the name The Synthetic Products Company, and $10,-000 cash. Lillian Chertoff contributed·$10,-000. The Trustees for each child contributed $10,000. Each contributor became the owner of a one-fifth interest in the partnership. The Articles provided that George Chertoff would devote his entire time to advancing the interest of the partnership, and that as agent of each of the other partners he would have charge of the partnership business, including buying, selling, manufacturing and finances of the firm. His appointment as such agent was terminable at the will of any partner. George Chertoff was to receive for his services the compensation exclusive of his share of the profits equal to 2% of the annual sales of the firm. The sale to George Chertoff and the liquidating dividends were reflected by book entries. Opening entries were also made on the books of the partnership. As of January 1, 1941, the manufacturing and sales end of the Synthetic Products Company were consolidated and were so conducted throughout the taxable year 1941.

The petitioners have treated all the trusts as valid and subsisting trusts. They have never been revoked, and such monies under the terms of said agreements as were collected were retained by the trustees in the respective trusts. Returns were filed for each of the years 1937, 1940 and 1941 with reference to each of the trusts, representing the amounts of income and tax due. There was no income to the trusts in 1938 or 1939. Returns were filed for the partnership after its formation. In making the deficiency assessments referred to, the Commissioner treated the income from the three trusts created by George Chertoff as taxable income to him, and also treated the income from the three trusts created by Lillian Chertoff as taxable income to her.

The Tax Court held that since the beneficiary of each trust would be under legal disability to make a valid appointment during his minority, in the event of his death during minority the trust corpus, with the accumulation of any trust income, would go in equal shares to Mr. and Mrs. Chertoff or in toto to the survivor of them; that the same devolution would result in the event of his death after reaching his majority without having validly exercised his power of appointment, and also in case the trust was terminated by reason of its spendthrift provisions in the absence of a valid exercise of the power of appointment; that the power of the trustees to pay to the beneficiary or his legal guardian from the principal of the trust such sums as the trustee might deem advisable without restriction as to use or purpose enabled the trustee to eliminate the beneficiary's appointee as a remainderman and also to pay to themselves as guardians of the beneficiary during his minority a part or the whole of the principal of the trust, including accumulated trust income, and to devote such payments to any use without restriction, including the carrying on of the business enterprises completely controlled and managed by petitioners to their economic benefit; that during the taxable years involved the beneficiaries were minors and

under Ohio Statutes the petitioners were the natural guardians of their minor children with the powers of a legal guardian as to their estates; that insofar as the powers of the management of the trust estates were concerned, they were practically the same as an individual might exercise over his own property and were availed of to serve the economic interest of Chertoff; that the continuance of Chertoff's absolute control of the business which he formally conducted for the corporation throughout the latter's existence was assured under the partnership arrangement; that if the trust income had been distributed in compliance with the provisions of the trust it would have been paid in the taxable years by petitioners as trustees to themselves as guardians of the beneficiary without restriction as to its use or purpose and accordingly could have been invested and controlled in a way to subserve their own economic interest; that during the taxable years involved the corpora of the existing trusts and the accumulated income were employed in the business of which George Chertoff was the sole manager at a lucrative compensation in addition to the share of the profits of the business; that it cannot be said that so long as the contingencies, controls, and power referred to continue, the beneficiary named, or any potential remainderman had any measurable or determinable vested right in the trust property, and that under such circumstances the petitioners retained such a bundle of rights with respect to the trust property as to amount, for Federal tax purposes, to substantial ownership thereof.

■ We agree with petitioners' contention that the income from the trusts is not taxable under Section 166 of the Internal Revenue Code, 26 U.S.C.A. Int.Rev. Code, § 166. The power to revest the title, referred to in that section, must be a vested power, not a contingent power as exists in these trusts. Suhr v. Commissioner, 6 Cir., 126 F.2d 283; Commissioner v. Betts, 7 Cir., 123 F.2d 534. Also the power of the trustees to accelerate the payment of principal in whole or in part to the beneficiary is not the equivalent of a power to terminate the trust and revest the as-

sets in the creator. Kohnstamm v. Pedrick, 2 Cir., 153 F.2d 506; Sunderland v. Commissioner, 3 Cir., 151 F.2d 675, 678. But these general conclusions, urged upon us very strongly by petitioners' brief, are not dispositive of the issues involved. Although the respondent contended in the Tax Court that the income in question was taxable to the petitioners under Sections 166 and 167, as well as under Section 22(a) of the Internal Revenue Code, 26 U.S.C.A. Int.Rev.Code, §§ 22(a), 166, 167, the Tax Court's ruling was that petitioners were taxable on the income of the trusts under Section 22(a). If the income involved is taxable under Section 22(a), it becomes immaterial that it is not taxable under either Section 166 or 167.

■ The respondent relies upon the principles laid down in Helvering v. Clifford, supra, and the ruling in Dobson v. Commissioner, 320 U.S. 489, 64 S.Ct. 239, 88 L.Ed. 248, that the determinations of the Tax Court are not reviewable if its decision has warrant in the record and a reasonable basis in the law. The petitioners contend that since the facts are stipulated the finding of the Tax Court that under the trust provisions here involved the petitioners retained such a bundle of rights with respect to the trust property as to amount, for Federal tax purposes, to substantial ownership thereof within the ruling of the Clifford case, is not a finding of fact but a clear-cut question of law and reviewable by this Court as such. Under that theory they strongly argue to us the merits of the case. If that theory is incorrect and the case is one to which the Dobson rule is applicable, such argument is irrelevant, since the issue involved is not open for redetermination by us. Choate v. Commissioner, 324 U.S. 1, 3, 4, 65 S.Ct. 469, 89 L.Ed. 653. Opinions of the Supreme Court subsequent to the Dobson case strongly indicate the finality which should be given to decisions of the Tax Court when the question involved is one of this character. Commissioner v. Scottish American Co., 323 U.S. 119, 65 S.Ct. 169, 89 L.Ed. 113; Commissioner v. Court Holding Co., 324 U.S. 331, 65 S.Ct. 707, 89 L.Ed. 981; John Kelley Co. v. Commissioner, 326

U.S. 521, 698, 66 S.Ct. 299. See also Trust of Bingham v. Commissioner, 325 U.S. 365, and concurring opinion of Mr. Justice Frankfurter at pages 377 through 384, 65 S.Ct. 1232, at pages 1238, 1241, 89 L.Ed. 1670. Those cases show that the Dobson rule is not restricted to primary findings of fact, but include findings or rulings based upon those facts, such as whether certain existing facts bring the case within the language of the taxing statute. As stated in Commissioner v. Scottish American Co., supra, 323 U.S. at page 124, 65 S.Ct. at page 171, 89 L.Ed. 113, "when the Tax Court's factual inferences and conclusions are determinative of compliance with statutory requirements, the appellate courts are limited to a determination of whether they have any substantial basis in the evidence."

■■ Whether or not stipulated or established facts bring the income from a trust within the ruling of the Clifford case has been before this Court, as well as other Courts, many times. Since, as pointed out in the Clifford opinion, no one fact is normally decisive, but all considerations and circumstances are relevant to the question of ownership and should be considered in making findings on that issue, it would serve little purpose to review them in any detail. Some of the earlier decisions of this Court are referred to in Downie v. Commissioner, 6 Cir., 133 F.2d 899. Those decisions were prior to the rule announced by the Supreme Court in Dobson v. Commissioner, supra, which now requires a different consideration of the question than was taken then, if the rulings of the Tax Court in such cases are not to be considered as clear-cut questions of law. We believe that under present authorities the determination by the Tax Court that the established facts either do or do not bring the case within the Clifford doctrine, is such a finding, either of fact or of mixed law and fact, that it is not reviewable in this Court except to the extent of determining if it has warrant in the record and a reasonable basis in the law. The Clifford case itself seems to hold that such a finding is one of fact. Helvering v. Clifford, supra, 309 U.S. at pages 336 and 338, 60 S.Ct. 554, 84 L.Ed. 788. This Court so treated the ruling in the Clifford case in Commis-

sioner v. Goulder, 6 Cir., 123 F.2d 686, 689. The precise question was not discussed in the majority opinion in Central National Bank of Cleveland v. Commissioner, 6 Cir., 141 F.2d 352, 153 A.L.R. 542, where the question involved was reviewed as a question of law and the rulings of the Tax Court to a large extent reversed. But the rule was again applied by this Court in the later cases of Miller v. Commissioner, 6 Cir., 147 F.2d 189, 193, and Byerly v. Commissioner, 6 Cir., 154 F.2d 879, certiorari denied, 328 U.S. ——, 67 S.Ct. 79. See also Steckel v. Commissioner, 6 Cir., 154 F.2d 4; Hopkins v. Commissioner, 6 Cir., 157 F.2d 679 and Mather v. Commissioner, 6 Cir., 157 F.2d 680, certiorari denied, 67 S.Ct. 676, where the Tax Court's rulings were affirmed, but without reference to the Dobson rule. This view also has support in other circuits. Klien v. Commissioner, 3 Cir., 154 F.2d 58; Littel v. Commissioner, 2 Cir., 154 F.2d 922; Hash v. Commissioner, 4 Cir., 152 F.2d 722. Under that view of the case, we are of the opinion that considering all the provisions of the trust, particularly the broad powers of the trustees, the relationship between the donor and the trustees in each trust and the reciprocal relationships between the trusts, the actual control which the petitioners exercised thereafter in the management of the business, and the retention of that control and economic benefit from the trusts by the possibilities inherent in the administration of the trusts by the petitioners, the determination of the Tax Court has warrant in the record and a reasonable basis in the law and must be affirmed.

■ The petitioners contend that the Tax Court's ruling that the petitioners, as natural guardians of their minor children, had the power of legal guardians as to their assets is erroneous as a matter of Ohio law; that such a ruling is a question of law reviewable by this Court; and that the final ruling of the Tax Court cannot be sustained because it is fundamentally based upon this erroneous consideration of the Ohio Statutes. They stress the fact that the provisions of the trust permit, under certain conditions, the payment of trust assets to the "legal" guardian of the minor in question, but not to either of the par-

ents as such; that the petitioners as the natural guardians are not the legal guardians; that there was no authority in the trustees to distribute the assets of the trust to the petitioners individually; and that this failure on the part of the Tax Court to properly distinguish between a natural guardian and a legal guardian is fundamental and fatal to the soundness of the ruling. It seems clear from the authorities referred to above that the law governing the relationship of guardian and ward is local in its nature and presents a clear-cut question of law reviewable by this Court. The Ohio Statutes provide for the appointment by the Probate Court, when found necessary, of a guardian of the person, or of the estate of a minor, or of both, who will have the care and management of the person, or the estate of such minor, or both, and that with certain exceptions a minor over the age of 14 years may select a guardian, who, if a suitable person, shall be appointed; that the father and mother have equal rights to the custody of the minor; and that a surviving parent may by last will appoint the guardian. Ohio Statutes, G. C. §§ 10507-1, 10507-2, 10507-8, 10507-12, 10507-13, 10507-15, 10507-16. The Ohio Statutes also make it the duty of the husband to support his wife and his minor children out of his property or by his labor; that if he is unable to do so the wife must assist him so far as she is able; and that no part of the ward's estate shall be used for the support, maintenance, or education of a ward unless ordered or approved by the Court. Ohio Statutes, G.C. §§ 7997, 10507-16. There is accordingly a clear distinction between a parent acting as the natural guardian of his minor child with custody of the person of the minor, and the position of legal guardian appointed by the Court for the purpose of care and management of the estate of such minor. We believe the distinction, however, not material to the ruling of this case. As a practical matter, the petitioners could have obtained appointment as legal guardians very quickly and easily. It cannot seriously be doubted that petitioners expected themselves to be appointed as legal guardians, if such appointment became necessary or advisable. It was not probable that the Ohio Court would appoint any one else instead if they applied for appointment and were suitable persons, or that any minor child over 14 would select any one else if either of the parents requested appointment. Nor do we consider it of material importance that the Tax Court construed the phrase "shall * * * pay" the income from the trust to the child in question, as "may pay" thus creating an unauthorized accumulation. The trusts were in fact administered by the Trustees so as to retain the monies collected by them in the respective trusts. Tax incidence "depends rather upon economic reality than upon purity of motive." Hash v. Commissioner, supra 152 F.2d at pages 723 and 724.

SIMONS, Circuit Judge, concurs in the result in so far as it is compelled by the application of the Clifford doctrine.

The judgments of the Tax Court are affirmed.