## SHAPERO v. COMMISSIONER OF INTERNAL REVENUE.

### No. 10516.

Circuit Court of Appeals, Sixth Circuit.

Feb. 3, 1948.

As Corrected March 15, 1948.

Thomas G. Long, of Detroit, Mich. (Thomas G. Long, of Detroit, Mich., on the brief), for petitioner.

L. W. Post, of Washington, D. C. (Theron Lamar Caudle, Helen R. Carloss, Lee A. Jackson and L. W. Post, all of Washington, D. C., on the brief), for respondent.

Before HICKS, ALLEN and MARTIN, Circuit Judges.

MARTIN, Circuit Judge.

Nate S. Shapero, a successful druggist of Detroit, Michigan, has petitioned for a review of the decision of the tax court holding that three separate trusts which he set up for his wife, his son, and his daughter fall within the ambit of Helvering v. Clifford, 309 U.S. 331, 60 S.Ct. 554, 84 L.Ed. 788—an old acquaintance not to be forgot but ever brought to mind, at each periodic court session of a United States Circuit Court of Appeals, by confrontation with at least one justiciable controversy involving some variegated form of family trust.

Our own lead-off contribution to the vast accumulation of Clifford bibliography was made in Altmaier v. Commissioner of Internal Revenue, 6 Cir., 116 F.2d 162, in which certiorari was denied, 312 U.S. 706, 61 S.Ct. 827, 85 L.Ed. 1138. Prior to the promulgation of the Dobson doctrine, 320 U.S. 489, 64 S.Ct. 239, 88 L.Ed. 248, we collated our up-to-then contributions to the subject matter in Downie v. Commissioner, 6 Cir., 133 F.2d 899, and brought our review down to April 7, 1947, in Chertoff v. Commissioner of Internal Revenue, 6 Cir., 160 F.2d 691. Therefore, no full-dress opinion would seem to be required when we meet a controversy, like the instant one, in which we agree with the logical, well-wrought and convincing opinion of the majority of the tax court, sitting en banc. Not resting upon the Dobson doctrine, we would be content to affirm the decision of the tax court upon its rationale, amply supported by cited applicable authority, were it not that each of the contending parties insists that a new issue is presented, which of necessity must be decided and not pretermitted by this court. After studying the problem, we concur in this insistence.

The tax court sustained the Commissioner of Internal Revenue and held, upon the primary authority of the Clifford case, that, for the years 1940 and 1941, the peti-

tioning settlor is accountable under section 22(a) of the Internal Revenue Code, 26 U.S.C.A. Int.Rev.Code, § 22(a), for the income of the three family trusts which he set up: those for his children being identical, and that for his wife differing only in immaterial conditions.

But, subsequent to the deficiency notice to the taxpayer and before this case was tried and decided by the tax court, a pertinent regulation, T.D. 5488, with an accompanying Mimeograph 5968 [1946, I.R. B. No. 2, Jan. 28, 1946] was issued by the Commissioner. T.D. 5488 was later amended by T.D. 5567 [I.R.B. No. 14, 1947, dated July 14, 1947]; and a Mimeograph (6156) accompanied the regulation, the first paragraph of which is substantially the same as the portion of Mimeograph 5968 which reads as follows: "The Treasury decision provides that Section 22(a) of the Code shall be applied in determining the taxability of trust income for taxable years beginning prior to January 1, 1946, without reference to the amendment to the regulations made by the Treasury decision. However, in cases not yet finally determined for such taxable years, it will be the policy of the Bureau, where no inconsistent claims prejudicial to the Government are asserted by trustees or beneficiaries, not to assert liability of the grantor under the general provisions of Section 22(a) of the Code, if the trust income would not be taxable to the grantor under the amendment to the regulations."

The petitioner argued to the tax court that, under the new regulations, he was not taxable; but the court thus responded in its opinion: "Our supplemental opinion in Estate of Louis Stockstrom, 7 T.C. 251, is dispositive of petitioner's argument based upon T.D. 5488 and Mimeograph 5968 [1946 I.R.B. No. 2, Jan. 28, 1946]." In the Stockstrom opinion to which it referred, the tax court had asserted that the Circuit Court of Appeals had "authorized," not "directed," it to consider the tax liability of Stockstrom on income from the trusts in the light of Treasury Decision 5488 and Mimeograph No. 5968; that the treasury decision, by its terms, was inapplicable to the tax years involved; and that the mimeograph presented a matter of ad-

ministrative policy with which the tax court is not concerned. The opinion added that the Commissioner has unquestioned power to comply with his Mimeograph No. 5968 in "any proceeding falling within its scope which has not been tried and decided by this court"; and that, in such proceeding, the Commissioner of Internal Revenue may decide as a matter of administrative policy to comply or not to comply with his Mimeograph.

■ We are not in accord with the position taken by the tax court. Being an administratrive tribunal and an independent agency within the Executive Branch of the Government, it should, in our judgment, have decided whether the Regulation and the Mimeograph do or do not, as a matter of law, apply to tax years prior to promulgation of the Commissioner's bulletins. The operative effect of the regulations and mimeographs should be left in no such nebulous shape. But we do not remand to the tax court and thereby prolong this litigation for the reason that, assuming retrospective applicability of the regulations and mimeographs, we think the decision of the tax court reached the correct result. See Helvering v. Gowran, 302 U.S. 238, 245, 58 S.Ct. 154, 82 L.Ed. 224. Our reasons for this view will be presently made apparent.

■ The relevant regulation is found in Treasury Regulations 111. See sec. 29.-22(a)-21, as added by T.D. 5488, 1946-1 Cum.Bull. 19, and amended by T.D. 5567, 1947-14 Int.Rev.Bull. 2. The caption is "Trust Income Taxable to the Grantor as Substantial Owner Thereof." The introductory paragraph (a) reads, as follows: "Income of a trust is taxable to the grantor under section 22(a) although not payable to the grantor himself and not to be applied in satisfaction of his legal obligations if he has retained a control of the trust so complete that he is still in practical effect the owner of its income. Helvering v. Clifford, 309 U.S. 331, 60 S.Ct. 554, 84 L.Ed. 788. In the absence of precise guides supplied by an appropriate regulation, the application of this principle to varying and diversified factual situations has led to considerable uncertainty and confusion.

The provisions of this section accordingly resolve the present difficulties of application by defining and specifying those factors which demonstrate the retention by the grantor of such complete control of the trust that he is taxable on the income therefrom under section 22(a). Such factors are set forth in general in paragraph (b) and in detail in paragraphs (c), (d), and (e), below."

In his skillfully prepared brief, the attorney for petitioner treats separately with each of the subdivisions of the amended regulations and urges that, under all, the instant trusts pass every test of nontaxability to the grantor. It is deemed unnecessary to discuss the effect of instead of to the provisions of the regulations, captioned respectively (b) In General; (c) Reversionary interest after a relatively short term; and (d) Power to determine or control beneficial enjoyment of income or corpus; inasmuch as the provisions of subdivision (e), Administrative control, are considered determinative of the issue. The first paragraph of this subdivision states: "Income of a trust, whatever its duration, is taxable to the grantor where, under the terms of the trust or the circumstances attendant on its operation, administrative control is exercisable primarily for the benefit of the grantor rather than the beneficiaries of the trust." The regulation then proceeds to illustrate at length when administrative control is to be considered "exercisable primarily for the benefit of the grantor." Among other statements, we find this assertion: "Where the trust corpus consists of stock or securities of a closely-held corporation, such a power may or may not, depending upon all the facts, be considered exercisable in a fiduciary capacity."

The statement is applicable here. We must look to the circumstances. The original corpus of the trust for the wife consisted of 20,000 shares of stock of a drug company founded by petitioner; and, during the years in controversy, each of the trusts for the children included 7,092 shares of this stock. The findings of fact disclose that, during 1940 to 1941, there were outstanding 190,798 shares of the drug-company stock. In 1940, 104,279 shares were voted, and 104,660 shares were voted in 1941. The percentage of shares voted by the Shapero interests, including the shares which were embraced in the trusts, amounted respectively to 60-64/100 percent in 1940 and 59-85/100 percent in 1941.

In each of the three trusts, executed on December 6, 1934, and amended by separate instruments on December 29, 1936, the petitioner nominated himself "Individual Trustee" and the Detroit Trust Company as "Corporate Trustee." The first numbered paragraph of each trust indenture provided: "The grantor shall have the power at anytime during his lifetime, by an instrument in writing delivered to the trustees, to modify, alter, change or amend this agreement in whole or in part, but not in such manner as to bring about a revocation of this agreement or to change or impair the right of enjoyment of any beneficiary, and provided, further, that grantor shall not have the power at any time during the continuance of the trusts hereof to revest in himself title to any part of the corpus or income of the trust hereby created."

The existence of reserved power, and not its exercise, is determinative in the assessment of tax liability in a case of this character. See Corliss v. Bowers, 281 U.S. 376, 50 S.Ct. 336, 74 L.Ed. 916; Griffiths v. Commissioner, 308 U.S. 355, 357, 60 S.Ct. 277, 84 L.Ed. 319; Harrison v. Schaffner, 312 U.S. 579, 581, 61 S.Ct. 759, 85 L.Ed. 1055.

As to the broad administrative control retained by the petitioner, the opinion of the tax court well and truly stated: "We think it would be difficult to vest more complete administrative control in a trustee than that which petitioner expressly retained to himself over the corpus of each trust. He held as trustee 'the fullest possible latitude in making investments,' the discretionary right to manage all the trust properties, the unlimited power to vote all trust stocks or to direct the manner in which they should be voted, 'absolute and uncontrolled discretion' to determine the expediency and propriety of selling, mortgaging, or otherwise disposing of all trust property, 'at such time or times and in such

manner, either public or private, and upon such terms' as he thought fit, the right to distribute in kind trust securities selected by him and to make a 'final and conclusive' determination of the proportions and prices at which such distributions should be made, the privilege of joining with security holders in voting trusts, reorganizations and refinancing arrangements and to deposit trust stocks for that purpose, the 'complete and absolute power * * * to direct the payment and conveyance * * * of any part or all of the principal of the trust property * * * as well as any accumulated income therefrom, to the then living beneficiary or beneficiaries thereof, in such proportions [as petitioner] may think proper,' and 'the fullest and most complete powers and authority which it is possible for Grantor to give in respect of all sales, investments, expenditures, management and control of the trust property and estate; * * *' It is clear that under the trust instruments the intended and vested powers of the corporate trustees were limited to the perfunctory duties of property custodian and bookkeeper. To the extent that Detroit Trust Company did more than that in the management of the trusts, it acted at the grace of petitioner as individual trustee and was at all times subject to his control. Petitioner's complete control over the Trust Company was assured by his retention in himself *as grantor* of the power to remove the corporate trustee, and fill or leave open the vacancy thus created."

The only material restriction upon the grantor's almost unlimited power of administrative control over the trust properties was the divestiture of his right "to revest in himself title to any of the trust property and estate or the income produced therefrom."

Without considering the Treasury Decision in controversy, the tax court concluded that the bundle of rights retained by the petitioner and the benefits enjoyable by him were "such that there was no substantial change in his economic position as a result of the transfers in trust." We think the same conclusion is impelled upon a full view of the intended clarifying regulations promulgated by the Commissioner.

It would seem that, under the first paragraph of the trust indenture, the grantor might so amend the document as to permit loans to himself, primarily for his own benefit. The power to vote the trusteed shares was an attribute of substantial ownership. The tax court pointed out that "it was through the trusts that petitioner had control of more than 50 percent of the voted stock." The tax court could not escape the conclusion, nor can this court, that the petitioner "was able through his retained powers to continue to benefit economically from the transferred property."

The position of the petitioner here is weaker than was that of the taxpayer in Byerly v. Commissioner of Internal Revenue, 6 Cir., 154 F.2d 879, certiorari denied, 329 U.S. 727, 67 S.Ct. 79, wherein deficiency assessments against the settlor in a family trust indenture were sustained, ample basis being found for the conclusion of the tax court that, notwithstanding the existence of the trust, the settlor remained in substantial control of the corporation; and that his business associates were chosen as trustees, not for the exercise of their independent judgment as fiduciaries, but because they were employed by the corporation which he had created and controlled. Chertoff v. Commissioner of Internal Revenue, 6 Cir., 160 F.2d 691, 692, 696, held that the finding of the tax court, that parents in creating trusts for their children retained such a "bundle of rights" with relation to trust property as to be tantamount for federal tax purposes to substantial ownership within the Clifford doctrine, had warrant in the record and a reasonable basis in law. See also Steckel v. Commissioner of Internal Revenue, 6 Cir., 154 F.2d 4; Warren v. Commissioner, 45 B.T.A. 379, 385, affirmed on order, 6 Cir., 133 F.2d 312. Compare Miller v. Commissioner, 6 Cir., 147 F.2d 189, 193; Dawson v. Commissioner, 6 Cir., 163 F.2d 664.

An early helpful contribution to the import of the Clifford doctrine was that of the Second Circuit Court of Appeals in Commissioner v. Buck, 2 Cir., 120 F.2d 775,

which bears important present analogies. The opinion writer in that case dissented from the court's later opinion in Cushman v. Commissioner, 2 Cir., 153 F.2d 510, cited by petitioner. We are in accord with the dissent.

One of the most interesting of the earlier cases is Cory v. Commissioner of Internal Revenue, 3 Cir., 126 F.2d 689, 690. Circuit Judge Clark thus pithily opened his illuminating discussion: "The case at bar is but a short stanza in an epic entitled 'The Use of the Short Term Trust for Tax Avoidance.' Taxpayers and their counsel have continuously sought to sail between the Scylla of surtaxes and the Charybdis of loss of control." Here, the taxpayer and his astute advocate, in much the same boat, encounter equally as rough sailing as did Cory and counsel. The navigator of each ship clung to such complete control of the vessel's direction and movement as to make a collision with Scylla inevitable.

Edison v. Commissioner, 8 Cir., 148 F.2d 810, 814, furnishes further authority for the conclusion which we have reached. The Court of Appeals said: "As we observed in Stockstrom v. Commissioner of Internal Revenue, 8 Cir., 148 F.2d 491, and Funsten v. Commissioner, 8 Cir., 148 F.2d 805, under our reading of the Supreme Court decisions, an owner who makes a gift in trust of property may still be taxable on its income, notwithstanding the legal effectiveness of the gift, where he has retained such control of the incidents and elements of his previous ownership, viewed in their practical significance in relation to the specific dedication, as to leave him in economic substance and result with what he previously had and enjoyed in the family situation. And, even though he may part also with control of the corpus of the gift as well as legal title, he equally may be taxable on the income which the property produces, where he has retained substantially his previous power, viewed in its practical significance in relation to the specific dedication, to command the disposition of the income."

Moreover, the same Circuit Court of Appeals, the Eighth, held upon the second appearance of the Stockstrom case, cited in its opinion, supra, that the tax court was justified by the evidence in holding that income was taxable to the settlor where she had created three trusts for the benefit of her children and grandchildren, wherein she named her husband and another person trustees and had reserved the right by amendment to name herself trustee, inasmuch as such reserved power gave her complete control over the actions of the trustees and over the distribution of the trust income. Even though the settlor did not appoint herself trustee, the unexercised power to revoke and amend was considered equally as effective in determining the settlor's measure of control as if the power had been exercised. Stockstrom v. Commissioner of Internal Revenue, 8 Cir., 151 F.2d 353. Here, the settlor, not only appointed himself controlling trustee, but expressly vested himself with broadest powers of control over the trust property.

The decision of the tax court is affirmed.