Jesse C. Bollinger and Clara V. Bollinger v. Commissioner.
Bollinger v. Commissioner
Docket No. 89402.
United States Tax Court
T.C. Memo 1963-75; 1963 Tax Ct. Memo LEXIS 267; 22 T.C.M. (CCH) 324; T.C.M. (RIA) 63075; March 15, 1963
Ralph H. Logan, Esq., 506 West Jefferson St., Louisville, Ky., for the petitioners. Arthur N. Mindling, Esq., for the respondent. TRAIN
Memorandum Findings of Fact and Opinion TRAIN, Judge: Respondent determined deficiencies in income tax and additions to tax of the petitioners for the calendar years 1945 through 1954 as follows: Additions to Tax
1939 Code
1954 Code
Sec.
Sec. 294
Sec.
Year
Deficiency
293(b)
(d)(1)(A)
6653(b)
1945
$9,847.38
$4,923.69
1946
1,719.32
859.66
1947
5,880.42
2,940.21
1948
2,069.88
1,034.94
$ 181.12
1949
1,303.04
651.52
117.29
1950
4,589.30
2,294.65
401.56
1951
7,000.08
3,500.04
607.57
1952
13,841.21
6,920.61
1,205.22
1953
30,191.43
15,095.72
2,635.71
1954
9,608.19
880.03
$4,804.10
The issues for decision are as follows: (1) Whether petitioners understated their income for the years 1945 through 1954; (2) Whether all or part of the deficiencies for the years 1945 through 1954 were due to fraud; (3) In the alternative, whether petitioners are liable *269 for the additions to tax for negligence and/or intentional disregard of rules and regulations provided for in section 293(a) of the 1939 Code and sections 6653(a) of the 1954 Code; and (4) Whether petitioners have established that their failure to file declarations of estimated tax was due to reasonable cause and not to willful neglect for the years 1948 through 1954. Findings of Fact Some of the facts have been stipulated. The petitioners, Jesse C. Bollinger (hereinafter sometimes referred to as Jesse) and Clara V. Bollinger (hereinafter sometimes referred to as Clara), are husband and wife. Federal income tax returns for the taxable years 1945 through 1951 and 1952 through 1954 were filed with the collector of internal revenue and district director of internal revenue, respectively, Louisville, Kentucky. Petitioners are the parents of nine children. The following schedule indicates the names, date of birth and date of marriage of each child: Date of
Name
Date of Birth
Marriage
James J.
Aug. 13, 1923
Violet
June 14, 1925
1943
Dorothy Rose
June 2, 1927
1951
Jesse C., Jr.
Feb. 2, 1929
Mary Ann
May 29, 1931
1951
Paul P.
Jan. 15, 1933
1955
Mary Helen
Jan. 15, 1935
1953
Joseph E.
July 15, 1937
Ruth
Nov. 2, 1939
*270 Jesse maintained a home in Louisville, Kentucky, throughout the entire period involved herein. With minor exceptions, all his children lived with him and were supported by him up until the time they married and left home. Seven of the children were still at home in 1945, and continued to remain there through the greater part of 1947. Jesse began the operation of a pest control business sometime around 1933. He had previously been employed for a short time by another pest control company. Prior to that time, he had been employed for an extended period by the Railway Express Company, first as a teamster and later as a truck driver. His pest control venture has always been at least modestly successful, and he is still engaged in that business. On or about September 28, 1932, Jesse executed the following instrument (hereinafter referred to as the deed): This Deed between Jesse C. Bollinger, party of the first part, and Clara Viola Bollinger, party of the second part, and all children born by her and him the third part, all of Louisville, Jefferson County, Ky., Witnesseth; That for One Dollar ($1.00) and other valuable consideration, the receipt of which is hereby acknowledged, *271 the parties of the first part hereby sell, grant and convey unto the party of the second part and third part, in fee simple, with covenant of General Warranty, the following described property situated in the City of Louisville, to-wit; Beginning on the South side of Kentucky Street, 191, 9/12ths feet west of Hancock Street, running thence westwardly along the South side of Kentucky Street, 30 feet, and extending back Southwardly of the same width throughout, between lines parallel to Hancock Street, 160 feet to an alley, being the same property conveyed to Calvin Bilyeu and Emma Bilyeu, his wife, by deed dated January 26, 1917, and recorded in Deed Book No. 868, page 299, in the office of the Clerk of the Jefferson County Court. Beginning on the West side of First Street 210 feet and 1 inch South of the Southwest corner of First and Oak Streets; thence Southwardly with the West line of First Street 34 feet and extending back Westwardly of the same width throughout between lines parallel with Oak Street 200 feet to an alley 20 feet wide, and being the same property conveyed to W. H. Gross by deed dated June 6th, 1923 and recorded in Deed Book 1043, at page 639, in the office of *272 the Clerk of the County Court of Jefferson County, Kentucky; and the same property conveyed to Jesse C. Bollinger and Clara Viola Bollinger, his wife, by deed dated January 16, 1931, and recorded in Deed Book 1469, page 43, in the office of the Clerk of said County. The parties of the first part further covenant that they are lawfully seized of the property hereby conveyed, that they have good right and full power to convey the same; that the said estate is free from all encumbrance. The party of the first part gives full right to the party of the second part to sell at a profit at any time. In testimony whereof, witness the signatures of the parties of the first part, this 28th day of September, 1932. On or about January 27, 1936, Jesse executed an instrument entitled "Deed of Correction" which purported to revise and correct the terms of the deed. The "Deed of Correction" read in part as follows: THIS DEED OF CORRECTION made by Jesse C. Bollinger of Deed of September 28, 1932 and recorded in Deed Book 1509, page 392, makes that Deed null and void, he or she has full right to sell before or after the death of either, as he or she desires, at any time in case of need or profit, *273 without any legal proceedings, and divide all estate after all creditors are paid, balance equally to all children born to them when needed to deposit in bank or Utility stock until needed, with 50% or one-half of estate belonging to each of them always without any legal proceedings. This deed of correction makes Deed in Book 1083, page 571, and Deed in Book 1469, page 43, good and for sale, or to mortgage at any time during their joint lives as joint tenants with remainder in fee simple to the survivors of them with covenant of General Warranty; Jesse C. Bollinger and Clara Viola Bollinger. This property in the City of Louisville, Jefferson County, Ky., all improvements thereon, rents and issues and profits to be used by him or her for maintenance of home, food and clothing for each child as they see needed without any legal proceedings. * * *
IN TESTIMONY WHEREOF, witness the signatures of the parties herein mentioned this 27 day of January 1936. Jesse C. Bollinger When he executed the first deed, it was Jesse's understanding that he was irrevocably parting with the ownership of the described property. The subsequent deed of correction was filed because an attorney informed *274 Jesse that it was necessary to have someone act as a trustee. Jesse believed that he had created a trust for his children by the deed of September 28, 1932, and the deed of correction dated January 27, 1936. He treated subsequently acquired property as though it were part of the corpus of the trust that he conceived to exist. However, Jesse did not segregate any funds or property in his possession or control in such a way as to identify the property as being held in trust for the benefit of the children. By January 1, 1945, 16 pieces of rental properties had been acquired. For the most part, each of these properties had been acquired at a cost of $2,500 or less. Several of these properties were sold in each of the years 1945, 1946 and 1947. The proceeds from such sales were invested in other rental properties. A number of these properties were subsequently deeded to petitioner's children. Jesse also opened a number of savings and loan accounts and from time to time deposited various sums therein. During the years 1945 through 1954, as well as prior thereto, Jesse regarded the property and assets under his control as a fund which he was free to use in any manner he might, from *275 time to time, deem appropriate to support and provide for his children while they were growing up, and to assist them thereafter in procuring college educations, establishing homes of their own, and the like. Jesse contemplated that after his children grew up and learned how to use money in a manner he deemed prudent, he would turn the assets over to them. Until the time the transfers were actually carried out, he reserved the power to determine both the intervening use and disposition of each piece of property. Jesse was a man of limited education. As a boy he had been very poor and he was determined that his children would have a better fate. However, he wanted to make sure that his children would not squander the assets he gave them. He endeavored to instill a sense of responsibility in the children by allowing them to do certain things, such as collecting rent and helping to maintain certain property. There was no time during the years 1945 through 1954 that Jesse maintained any records with respect to his receipts, disbursements, assets and liabilities which were sufficiently complete to have enabled him to make anything like a reasonably accurate accounting to his children *276 with respect to the rents, interest and profits derived from the assets he controlled. However, at different times Jesse would visit his children and make oral reports as to how the property, rentals, savings accounts and other assets were progressing. No fiduciary income tax returns have ever been filed on behalf of any trust for the benefit of the petitioners' children or grandchildren with respect to any of the years 1945 to 1954, inclusive. For the taxable years 1945 through 1954, respondent determined petitioners' net income by means of the net worth method. Respondent treated all the cash in banks, savings accounts and real estate as belonging to petitioners personally. The following determination was made in the notice of deficiency: Determina-
Net Income
tion of
Reported on
Understate-
Net Income
Petitioners'
ment of
Year
Determined
Return
Net Income
1945
$27,302.22
$3,900.00
$23,402.22
1946
11,499.36
4,000.00
7,499.36
1947
21,979.83
4,000.00
17,979.83
1948
15,559.94
4,250.60
11,309.34
1949
12,700.84
736.56
11,964.28
1950
23,606.92
2,623.46
20,983.46
1951
27,578.51
454.04
27,124.47
1952
39,424.97
2,689.07
36,735.90
1953
64,149.98
3,310.53
60,839.45
1954
30,114.42
3,226.84
26,887.58
*277 No part of the deficiencies for the years 1945 through 1954 was due to fraud with intent to evade tax. Opinion Issue 1 The issue is whether petitioners understated their income for the years 1945 through 1954. Petitioners contend that the deed and deed of correction established a trust under Kentucky law. They contend that property subsequently acquired was owned by the trust. Petitioners contend that the understatement of income in each year is due to respondent's erroneous inclusion of trust assets in their net worth. Respondent contends that no trust ever existed. Respondent maintains that the instruments executed by Jesse were primarily testamentary in character. Respondent contends that even if it is assumed that a valid trust exists that Jesse retained such complete and unrestricted control over the property that he should be taxed on the income. Section 22(a), 1939 Code, and section 61, 1954 Code, and Helvering v. Clifford, 309 U.S. 331 (1940). We agree with the respondent. The 1932 and 1936 deeds are more in the nature of testamentary instruments. The testamentary attributes of the 1936 deed, which purported to nullify the 1932 deed, include repeated *278 references to the retention by Jesse and Clara of very broad discretionary powers over the property dealt with. The powers so reserved include a "full right to sell before or after * * * death * * * as he or she desires, at any time in case of need or profit." The reserved powers were totally unrestricted in the sense that express provision was made for their exercise "without any legal proceedings." From Jesse's testimony and the action he took with respect to the property in question, it seems apparent that he did not regard his execution of the 1932 deed or the 1936 deed of correction as in any way restricting his complete freedom to determine how such property should be managed and used while it remained under his control. Upon consideration of the whole record, it is evident that petitioner was simply attempting to accumulate an estate pursuant to a general plan or program which did not differ from the natural aspirations and ambitions of most parents. Such a program contemplated that after his children grew up and learned how to use money in the manner he deemed prudent, he would turn some of his assets over to them. Until the transfers were actually made, Jesse effectively *279 reserved a wholly unrestricted power to determine both the intervening use and the disposition of each piece of property. Petitioners have failed to create a valid trust either by the instruments recorded in 1932 and 1936 or by parol. Both the subject of the supposed trust and the beneficiaries must be definitely ascertainable in order to have a valid trust. Brown v. Brown's Administrators, 129 Ky. 138, 110 S.W. 831 (1908); Sanford's Administrator v. Sanford, 230 Ky. 429, 20 S.W. 2d 83 (1929); Farmer's Nat. Bank of Cynthiana v. McKenney, 264 S.W. 2d 881 (C.A. Ky., 1954). In the instant case, the subject matter of the trust was neither definite nor definitely ascertainable. In addition, it does not appear from the instruments in question or from the record that Jesse ever intended to pass a present interest to his children. Where a settlor declares himself trustee and reserves not only a beneficial life estate and power to revoke and modify the trust but also a power to deal with the property as he likes as long as he lives, the intended trust is testamentary. Dawson v. Dawson's Administratrix, 272 S.W. 2d 666 (C.A. Ky., 1954). *280 Even assuming that we were able to find that petitioners created a valid trust, the income would remain taxable to petitioners. The continued retention of a totally unrestricted power to control the use and disposition of the assets as well as the income to be derived therefrom during the grantor's life, provides ample justification for continuing to tax the grantor. See Nate S. Shapero, 8 T.C. 104 (1947), aff'd 165 F. 2d 811 (C.A. 6, 1948), certiorari denied 334 U.S. 844 (1948); and section 39.22(a)-21, Regs. 118, section 674, 1954 Code, section 1.674(a) and (b), Income Tax Regs.
Issue 2 The issue is whether all or a part of the deficiencies for each of the years 1945 through 1954 was due to fraud. The taxable years 1945 through 1949 are barred by the statute of limitations unless respondent proves fraud for those years. The burden of proving fraud is on the respondent. Section 293(b), 1939 Code, section 6653(b), 1954 Code. Respondent must prove by clear and convincing evidence that petitioners understated their income and that all or part of such understatement was due to petitioners' fraudulent intent to evade taxes. The question is *281 one of fact. A petitioner's failure to overcome the presumptive correctness of a deficiency cannot be regarded as proof of fraud. Drieborg v. Commissioner, 225 F. 2d 216 (C.A. 6, 1955); Oscar G. Joseph, 32 B.T.A. 1192, 1204 (1935); James Nicholson, 32 B.T.A. 977, 988 (1935). Failure of proof cannot be used as substitute for the evidence necessary to sustain respondent's burden since the elements of fraud must be affirmatively established. Luerana Pigman, 31 T.C. 356 (1958); Oscar G. Joseph, supra; James Nicholson, supra.Thus, both parties may fail through inadequate proof on their several issues and, in such case, the deficiency would be sustained and the fraud determination would be set aside. L. Schepp Co., 25 B.T.A. 419, 437 (1932). On the record before us, respondent has failed to prove by clear and convincing evidence that petitioners filed fraudulent returns. Jesse was a man of meager education. He honestly believed that he had set up a trust for his children and that he was dealing with their property. Jesse had been extremely poor in his childhood and he was determined that his *282 children should have a better fate. His whole life was devoted toward fulfilling this goal. He wanted to make sure, however, that each child would appreciate what was being given to him and would not squander such property. Generally, as each child was growing up Jesse would designate a piece of property as belonging to that child. Before the property was finally deeded over, the child would collect the rent for some time. While we have found that petitioners were taxable on the income from what Jesse conceived to be trust property, there was ample evidence that Jesse believed and acted as though it was trust property. This is supported by the testimony of every witness who knew anything of the matter. At different times, Jesse made oral reports to the children as to how the property, rentals, savings accounts and other assets were progressing. Once we remove from respondent's net worth statement the notes receivable, the real estate and profits on the sale thereof and savings accounts and interest thereon, there is either no understatement or it is de minimis. These were the assets that Jesse conceived belonged to the trust. It is true that he at times dealt with the property *283 as though it were his own; however, we attribute this to his cautious and protective attitude. He had worked hard to build something for his children and he did not wish to see it squandered away. Thus, he kept a tight rein on the property. Respondent contends that Jesse had a "reasonably good understanding of general income tax affairs." We are satisfied from the record that this was not the case. We are convinced that Jesse's testimony was honest and that he acted to the best of his limited ability. If there was any income omitted from petitioners' returns other than that which Jesse conceived to be part of the trust, it was through inadvertence and not due to any fraudulent intent. We hold that the respondent's fraud determination was erroneous. Issue 3 The issue is whether any part of the deficiencies for the years 1950 through 1954 were due to negligence or intentional disregard of rules and regulations as provided in section 293(a), 1939 Code [1] and section 6653(a), 1954 Code. [2]
*284 Every taxpayer has a duty to maintain sufficient records to enable him to make a proper return of his true income. Dorothy L. Sutherland, 32 T.C. 862, 866 (1959); Rudolph A. Zivnuska, 33 T.C. 226, 239-241 (1959). It is evident from the record before us that a part of the deficiency or underpayment for each of the years 1950 through 1954 was due to petitioners' negligent or intentional failure to keep adequate books and records. Issue 4 The issue is whether petitioners' failure to file declarations of estimated tax for the years 1950 through 1954 [3] was due to reasonable cause and not to willful neglect under section 294(d)(1), 1939 Code. [4]
*285 Since petitioners did not argue this point in their original brief and did not file a reply brief, it would appear that they have abandoned this issue. However, the evidence would not support petitioners in any event. At one point in the record there was some vague testimony concerning the failure to file declarations of estimated tax; however, it was insufficient to sustain petitioners' burden of proof. On this issue, we hold for the respondent. Decision will be entered under Rule 50. Footnotes
1. SEC. 293. ADDITIONS TO THE TAX IN CASE OF DEFICIENCY. (a) Negligence. - If any part of any deficiency is due to negligence, or intentional disregard of rules and regulations but without intent to defraud, 5 per centum of the total amount of the deficiency (in addition to such deficiency) shall be assessed, collected, and paid in the same manner as if it were a deficiency, except that the provisions of section 272(i), relating to the prorating of a deficiency, and of section 292, relating to interest on deficiencies, shall not be applicable. ↩
2. SEC. 6653. FAILURE TO PAY TAX. (a) Negligence or Intentional Disregard of Rules and Regulations With Respect to Income or Gift Taxes. - If any part of any underpayment (as defined in subsection (c)(1)) of any tax imposed by subtitle A or by chapter 12 of subtitle B (relating to income taxes and gift taxes) is due to negligence or intentional disregard of rules and regulations (but without intent to defraud), there shall be added to the tax an amount equal to 5 percent of the underpayment.↩
3. Respondent also determined that additions to tax under section 294(d)(1) for the years 1948 and 1949; however, under our previous holding these years are barred by the statute of limitations. ↩
4. SEC. 294. ADDITIONS TO THE TAX IN CASE OF NONPAYMENT. * * *
(d) Estimated Tax. - (1) Failure to file declaration or pay installment of estimated tax. - (A) Failure to File Declaration. - In the case of a failure to make and file a declaration of estimated tax within the time prescribed, unless such failure is shown to the satisfaction of the Commissioner to be due to reasonable cause and not to willful neglect, there shall be added to the tax 5 per centum of each installment due but unpaid, and in addition, with respect to each such installment due but unpaid, 1 per centum of the unpaid amount thereof for each month (except the first) or fraction thereof during which such amount remains unpaid. In no event shall the aggregate addition to the tax under this subparagraph with respect to any installment due but unpaid, exceed 10 per centum of the unpaid portion of such installment. For the purposes of this subparagraph the amount and due date of each installment shall be the same as if a declaration had been filed within the time prescribed showing an estimated tax equal to the correct tax reduced by the credits under sections 32 and 35.↩