## No. 9628.

### DALTON *v*. THE PEOPLE.

1. CRIMINAL LAW—*Evidence.* Indictment for Criminal Conspiracy. Conversations had while the conspiracy is in progress are admissible.

2. HUSBAND AND WIFE may conspire to commit a criminal offense.

3. *Privileged Communications.* A letter written by a woman convict to her husband, touching an alleged conspiracy, is not, without the wife's consent, admissible against another accused of participation in the same offense.

Objecting to a copy of the letter is not a waiver of the wife's privilege.

4. *Hearsay.* Statement of the husband to the District Attorney upon exhibiting the letter, as to a part thereof not exhibited, is hearsay and not admissible.

5. *Unauthorized Disclosure,* by the husband does not waive the wife's privilege.

6. CONSPIRACY—*Evidence.* Defendant was charged with a conspiracy to steal an automobile. He had taken the car in Sterling and driven it to Julesburg. An instruction requiring that in order to convict the jury must believe that this removal of the car was in pursuance of the conspiracy held properly refused.

*Error to Logan District Court, Hon. L. C. Stephenson, Judge.*

*Department Two.*

Messrs. COEN & SAUTER and Messrs. MUNSON & MUNSON, for plaintiff in error.

Hon. VICTOR E. KEYES, Attorney General, and CHARLES ROACH, Deputy, for The People.

Mr. Justice Denison delivered the opinion of the court.

JAMES DALTON was convicted of conspiracy with Olive Dalton, his wife, and one Mrs. Rose, to steal an automobile of one Harris. He secured a separate trial. Mrs. Rose, who had pleaded guilty to the same charge, was brought from the penitentiary and was the principal witness against him.

The only points made by plaintiff in error which it is necessary to notice are as follows:

1.   It is claimed that the court improperly permitted the witness, Mrs. Rose, to relate conversations between herself and Mrs. Dalton which occurred after the consummation of the conspiracy. No such testimony was admitted. The car was taken by Dalton in Sterling, and driven by him to Julesburg and left in a garage. He returned to Sterling, gave the claim check to Mrs. Rose who went to Julesburg and took the car to Holyoke for sale. The conversation to which the defense objected took place between Dalton's return to Sterling and Mrs. Rose's trip to Julesburg and Holyoke, all of which was in furtherance of the conspiracy. 2 Whar. Crim. Ev. 10th Ed., § 699, 12 Cyc., p. 438.

2.   R. R. Rose, husband of Mrs. Rose, was a witness for defense. The defense offered to identify by him and by other testimony, and to put in evidence a copy of a part of a letter from her to him, written in the penitentiary, in which she purported to relate the facts of the taking of the automobile different in some respects from what she had stated on the stand. The letter had been destroyed by the husband after it had been shown by him to Mr. Coen, one of the attorneys for the defense, and he, Coen, had been permitted to make the copy offered in evidence. The prose-

cution objected *inter alia* on the ground that the letter was a communication from a wife to her husband, and so privileged.

We think the objection is sound. The question before the court was two-fold: (a) Whether the husband, without the wife's consent, could testify to the contents of the letter (or to the correctness of the copy which would be the same thing); (b) Whether even the original letter, if it had been present, would have been admissible.

Under our statute it is clear that the first question must be answered in the negative. "Nor shall either during the marriage or afterward be, without the consent of the other, examined as to any communication made by one to the other during the marriage." R. S. 1908, § 7274.

The rule expressed in the above quotation is not restricted to cases where husband or wife is a party, because such cases are already provided for in the previous part of the same sentence, and because the rule forbidding husband and wife to testify against each other is entirely distinct and has nothing in common with the rule granting the privilege to communications between husband and wife. Wig. Ev., §§ 600, 2228, 2333-4.

The testimony, therefore, of Rose on the subject of this letter was properly rejected, and since no other competent evidence was offered as to its genuineness, we cannot see that there was error in rejecting it. Apart from this question, however, we are of the opinion that the letter itself was privileged, and that without Mrs. Rose's consent it could not be admitted.

The defense argues that the wife, Mrs. Rose, waived her privilege, because, being called before the court and asked whether she was willing to waive it, she said she would not object to the original letter but did object to the copy. This raises a question upon which we are favored with no citation of authority, but her action amounted to a refusal, the reason for which was that the original was not available. Upon principle it would seem that she might refuse for any reason or no reason. We see no waiver here.

It is also urged that in that part of the letter that was not copied she requested or authorized her husband to show the letter to the attorney for the defense, which would constitute a waiver. We do not find that this request is shown in the record or included in the offer of proof made by counsel for the prisoner when this point was before the court. His offer was to show by witness Coen that the witness R. R. Rose brought the letter to Coen and "stated" to Coen "that he brought the letter to the witness Coen at a suggestion contained in the letter on the other page of the letter." This was hearsay, and therefore not competent to show the request. The unauthorized disclosure of the letter by the addressee does not waive the writer's privilege. The disclosure to Coen by Rose is not shown to have been authorized so for this second reason it was not error to reject the letter. Wig. Ev., § 2339 (2).

In *People v. Hayes,* 140 N. Y. 484, 35 N. E. 951, 23 L. R. A. 830, 37 Am. St. 572, cited by the defense, the disclosure of the letter was by him who was claiming the privilege, so that case is not in point.

3. The court gave the following instruction: "The gist of the offense of larceny is the unlawful intent, and before you can convict in this case you must find from the evidence in this case beyond a reasonable doubt that the defendant entered into a conspiracy with his co-defendants, or one of them, to steal the car described in the information." This was excepted to because it authorized the jury to convict defendant for a conspiracy with his wife alone. The prosecution, however, claims that the married women's acts of this State have removed the reason for the common law rule that man and wife cannot conspire, which was because they are one person. We think this position sound. The proposition that man and wife are so literally one person that they cannot agree with each other to commit a crime is as discordant with the present policy and tendency of our laws as it was harmonious with the older laws of England.

There were two reasons on which the proposition was based, First: that man and wife are one and that one can-

not conspire. Second: that the husband is presumed to control the wife. Both these propositions have been abandoned in all our legislation in respect to the marital relation. *Schuler v. Henry,* 42 Colo. 367, 94 Pac. 360, 14 L. R. A. (N. S.) 1009; *Wells v. Caywood,* 3 Colo. 487; *Williams v. Williams,* 20 Colo. 56, 37 Pac. 614; *Whyman v. Johnston,* 62 Colo. 461, 163 Pac. 76.

The common law theory that control by the husband is presumed was, in effect, abolished by statute in 1861. R. S. 1908, § 1616. The law of this State requires the coercion by the husband to be proved.

We agree with the theory of *Smith v. State,* 48 Tex. Crim. 233, 89 S. W. 817, rather than with *People v. Miller,* 82 Cal. 107, 22 Pac. 934.

4. The defense contends that their offered instructions, Nos. 2 and 3, should have been given. Both were rightly refused, because they state or imply that the fact of Dalton's taking the machine to Julesburg in pursuance of the conspiracy was necessary to a conviction. The jury were rightly instructed that if they believed beyond a reasonable doubt that there was a conspiracy, they should convict regardless of whether the machine was actually stolen in pursuance of such conspiracy.

The judgment should be affirmed.

Garrigues, C. J. and Scott, J. concur.