Lester Julian **THOMPSON** and Estelle Shell Goben Thompson (Mrs. Lester Julian Thompson), Appellants,

v.

**UNITED STATES of America,** Appellee.

No. 15489.

United States Court of Appeals Fifth Circuit.

Nov. 18, 1955.

T. Reese Watkins, Macon, Ga., for appellants.

Floyd M. Buford, Robert B. Thompson, Asst. U. S. Attys., Frank O. Evans, U. S. Atty., Macon, Ga., for appellee.

Before RIVES, TUTTLE and JONES, Circuit Judges.

RIVES, Circuit Judge.

Appellants, husband and wife, were convicted of conspiracy, 18 U.S.C.A. § 371, to violate the White Slave Traffic Act, 18 U.S.C.A. § 2421. The indictment charged that the defendants conspired and agreed with each other "and divers other persons to the grand juror unknown" to commit the offense of unlawfully transporting in interstate commerce from Shawmut, Alabama, to Thomaston, Georgia, and from Macon, Georgia, to Jacksonville, Florida, a woman named Hattie Johnson for the purpose of prostitution and debauchery and for other immoral purposes.

Appellants' first contention is that the district court erred in overruling their motions for judgments of acquittal on the ground of insufficiency of the evidence. Under the standards of review, restated by this Court in Lloyd v. United States, 226 F.2d 9, we are inclined to the view that the evidence was sufficient to present a jury question as to the guilt of each defendant. Since, however, the judgments of conviction must be reversed upon another ground, we forego discussion of the sordid details and circumstances and any definite holding that the evidence was sufficient to authorize the appellants' convictions. Upon another trial the evidence may be different and, if not, we do not wish to bind the court by holding as to the sufficiency of the evidence.

The appellants next urge that the court erred in overruling their motions for judgments of acquittal upon the ground that husband and wife may not

be guilty of conspiring together because they are a single legal entity. The Ninth Circuit has so held in Dawson v. United States, 10 F.2d 106, and in Gros v. United States, 138 F.2d 261. The District of Columbia Circuit has held to the contrary in Johnson v. United States, 81 U.S.App.D.C. 254, 157 F.2d 209. The district courts in this Circuit are likewise at odds, as are the various state courts. See United States v. Shaddix, D. C.S.D.Miss., 43 F.Supp. 330; Ex parte Estep, D.C.N.D.Tex., 129 F.Supp. 557, 558; see also dissenting opinion of Chief Judge Hutcheson in Ansley v. United States, 5 Cir., 135 F.2d 207, 208; 11 Am. Jur., Conspiracy, § 7, p. 547, notes 6 and 7; 15 C.J.S., Conspiracy, § 37; 41 C.J.S., Husband and Wife, § 227; cases in West's Key Numbered Digest under Husband and Wife, ⊕137.

In brief the appellee insisted that we do not reach the question of whether husband and wife constitute a single entity, incapable alone of the offense of conspiracy, because the indictment charged that they conspired also "with divers other persons", and the evidence was sufficient to connect a third party or third parties with the conspiracy. Upon oral argument, however, the appellee conceded that in the present record there is no substantial evidence of the participation of a third party in the conspiracy, and our careful reading of the record confirms that fact. There is no indication that the Government on another trial can present stronger proof that there was a third party to the conspiracy. If, therefore, in the absence of any other person, it is impossible for husband and wife to be guilty of conspiracy, we should so hold at this time in order that there may be an end to this case.

 The statute proscribes conspiracies between "two or more persons." 18 U.S.C.A. § 371. The Roman or civil law, forming the basis of the marital law in some of the states, always recognized the separate existence of husband and wife. In most, if not all, of the strictly common law states the unity of the spouses has been severed by Married Women's Acts. 26 Am.Jur., Husband and Wife, § 3; 41 C.J.S., Husband and Wife, § 5. We are strikingly reminded of the modern trend by the fact that the foreman of the jury which returned the verdict in this case was a married woman. There are no common law federal crimes. Williams v. United States, 5 Cir., 179 F.2d 644, 647. Words used in statutes creating federal offenses may be construed in the light of the common law, but we see no reason to import into the present statute the concept of the common law unity of husband and wife now prevailing in few, if any, of the states. We agree with the District of Columbia Circuit that,

"No reason remains why the law should not recognize the obvious fact that the relation of husband and wife does not prevent two persons from conspiring to commit an offense. The interest of society in repressing crime requires that the fact be recognized, and our common-law system does not require that its recognition await express legislative action." Johnson v. United States, 81 U.S.App.D.C. 254, 157 F.2d 209.[1]

The judgments of conviction must be reversed, we think, for the error of the district court in permitting, over the objection of the defendants, three Jacksonville, Florida, police officers to testify to certain statements made to them by the appellant Estelle Thompson. Two of the officers answered a call shortly after midnight on July 11, 1953, to meet a party at Duval and Main Streets in Jacksonville. There they found appellant Estelle Thompson and also Hattie Johnson. Estelle Thompson told them that "her husband had her in the Windle

---

[1]. We do not reach the question of whether statements of the husband and wife made during and in pursuance of the conspiracy would be admissible against each other. The marital relationship as a testimonial disqualification is not based entirely on the common law unity of husband and wife. 2 Wigmore on Evidence, 3rd ed., §§ 600, 601; 8 Id. § 2227.

Hotel and making her hustle for him and he wouldn't give her any of the money and she was damn tired of it and wanted him put in jail." Appellant Lester Thompson was not present on this occasion. The officers, however, took the two women in custody, carried them in the police car to the Windle Hotel, and there found Lester Thompson and another man. Both women and both men were then carried to the police station. There, in the presence of Lester Thompson and the two officers, Estelle Thompson related the same story to the Lieutenant of Police. On the same occasion, according to the Lieutenant, Hattie "denied that she had been implicated in prostitution at all." The reaction of appellant Lester Thompson to his wife's accusation, according to one of the police officers, was "He just said, 'Well she's mad now and she's drinking and she's mad.' He said, 'Don't believe a word of it.' I think that is pretty well the words he said." The Lieutenant of Police testified: "She was crying at the time and stated that she wanted him put in jail. I asked him what his story was of it. He said she was mad and drunk and not to believe a word of it." The two police officers testified that they thought Estelle was drinking but not so drunk at the time that she could not talk sensibly. The Lieutenant testified that she could have been drinking, that she was crying and appeared to be mad. The officers were emphatic to the effect that Estelle was complaining only of her husband's conduct toward her, his wife, and did not make any statement that her husband was making Hattie prostitute herself.

■ The statement was inadmissible as against Lester, either upon the theory of a conspiracy or because made in his presence. It was made after Estelle had clearly terminated any pre-existing conspiracy and was not in furtherance thereof. See Krulewitch v. United States, 336 U.S. 440, 443, 69 S.Ct. 716, 93 L.Ed. 790; Fishwick v. United States, 329 U.S. 211, 217, 67 S.Ct. 224, 91 L.Ed. 196; Montford v. United States, 5 Cir.,

200 F.2d 759, 760; Seeman v. United States, 5 Cir., 90 F.2d 88, 90; 4 Wigmore on Evidence, 3rd ed., § 1079. The appellant Lester Thompson urges that the admission of the statement, though made in his presence, was tantamount to permitting Estelle to testify against her husband. See Griffin v. United States, 336 U.S. 704, 69 S.Ct. 814, 93 L.Ed. 993; Lutwak v. United States, 344 U.S. 604, 73 S.Ct. 481, 97 L.Ed. 593; United States v. Walker, 2d Cir., 176 F.2d 564, 568; United States v. Lutwak, 7 Cir., 195 F.2d 748; Annotation beginning at p. 607 of 97 L.Ed.; 2 Wigmore on Evidence, 3rd ed., §§ 600, 601; 8 Id., § 2227, et seq. In passing upon the admissibility of Estelle's statement, however, as against Lester because made in his presence, we do not reach the effect of their relationship as husband and wife, because we think that it would not have been admissible against him even if made by some third person.

■ Estelle's statement in Lester's presence could be admissible against him only upon the theory that by his conduct he virtually adopted that statement or made it his own admission, "qui tacet consentire videtur", "silence gives consent." 4 Wigmore on Evidence, 3rd ed., § 1071. But Lester did not remain silent, nor in any way adopt Estelle's statement as his own vicarious admission. Instead, his response was that Estelle was mad and drinking and not to believe a word of her statement. "In the absence of any evidence to prove that the defendant who was present acquiesced in the truth of such statement made by Hudson, testimony as to the making of that statement was inadmissible, and the objection to such testimony on the ground that it was hearsay should have been sustained." Amezaga v. United States, 5 Cir., 296 F. 915, 916. See also, United States v. Dellaro, 2d Cir., 99 F.2d 781, 783; 22 C.J.S., Criminal Law, § 734(b), p. 1265.

■ The only way that the statement could be relevant even against Estelle upon the question of whether she had con-

spired to transport Hattie in interstate commerce for immoral purposes was through some such circumstance as the fact that Hattie and Estelle were occupying the same room in the Windle Hotel. That seems to us, however, entirely too tenuous a connection to make this evidence admissible against Estelle alone.[2]

 Estelle's statement was, of course, highly prejudicial to both defendants. Upon no legal theory was it admissible against either of them. For the error in admitting it over the defendants' objection, the judgments of conviction must be reversed and the cause remanded for a new trial.

Reversed and remanded.

JONES, Circuit Judge, concurs in the result.

---

2. We may note also that, assuming the absence of any sufficient evidence of a third party conspirator, Estelle alone could not be adjudged guilty of conspiracy. Cofer v. United States, 5 Cir., 37 F.2d 677, 680; Worthington v. United States, 7 Cir., 64 F.2d 936, 939; cf. Rogers v. United States, 340 U.S. 367, 375, 71 S.Ct. 438, 95 L.Ed. 344.