## UNITED STATES *v.* DEGE ET VIR.

No. 14.   Argued October 20, 1959.—Decided June 27, 1960.

*Jerome M. Feit* argued the cause for the United States. With him on the brief were *Solicitor General Rankin, Assistant Attorney General Wilkey* and *Beatrice Rosenberg.*

*Thomas Whelan* argued the cause for appellees.   With him on the brief was *J. Robert O'Connor.*

MR. JUSTICE FRANKFURTER delivered the opinion of the Court.

This is an indictment charging husband and wife with conspiring to commit an offense against the United States in violation of § 371 of Title 18 of the United States Code, which was enacted by Congress on June 25, 1948, 62 Stat. 683, 701, in connection with § 545 of that Code, *id.,* 716, in that they sought illicitly to bring goods into the United States with intent to defraud it.   On authority of controlling decisions of its Circuit, *Dawson* v. *United States,* 10 F. 2d 106, and *Gros* v. *United States,* 138 F. 2d 261, the District Court dismissed the indictment on the ground that it did not state an offense, to wit, a husband and wife are legally incapable of conspiring within the condemnation of § 371.   The case came here on direct review of the order dismissing the indictment, 358 U. S. 944, under the Criminal Appeals Act of March 2, 1907, now 18 U. S. C.

§ 3731. The construction of § 371 by the Court of Appeals for the Ninth Circuit has been explicitly rejected by the Court of Appeals for the District of Columbia Circuit, *Johnson* v. *United States,* 81 U. S. App. D. C. 254, 157 F. 2d 209, and by the Court of Appeals for the Fifth Circuit, *Thompson* v. *United States,* 227 F. 2d 671, and *Wright* v. *United States,* 243 F. 2d 569.

The question raised by these conflicting views is clearcut and uncomplicated. The claim that husband and wife are outside the scope of an enactment of Congress in 1948, making it an offense for two persons to conspire, must be given short shrift once we heed the admonition of this Court that "we free our minds from the notion that criminal statutes must be construed by some artificial and conventional rule," *United States* v. *Union Supply Co.,* 215 U. S. 50, 55, and therefore do not allow ourselves to be obfuscated by medieval views regarding the legal status of woman and the common law's reflection of them. Considering that legitimate business enterprises between husband and wife have long been commonplaces in our time, it would enthrone an unreality into a rule of law to suggest that man and wife are legally incapable of engaging in illicit enterprises and therefore, forsooth, do not engage in them.

None of the considerations of policy touching the law's encouragement or discouragement of domestic felicities on the basis of which this Court determined appropriate rules for testimonial compulsion as between spouses, *Hawkins* v. *United States,* 358 U. S. 74, and *Wyatt* v. *United States,* 362 U. S. 525, are relevant to yielding to the claim that an unqualified interdiction by Congress against a conspiracy between two persons precludes a husband and wife from being two persons. Such an immunity to husband and wife as a pair of conspirators would have to attribute to Congress one of two assumptions: either that responsi-

bility of husband and wife for joint participation in a criminal enterprise would make for marital disharmony, or that a wife must be presumed to act under the coercive influence of her husband and, therefore, cannot be a willing participant. The former assumption is unnourished by sense; the latter implies a view of American womanhood offensive to the ethos of our society.

The fact of the matter is that we are asked to write into law a doctrine that parrot-like has been repeated in decisions and texts from what was given its authoritative expression by Hawkins early in the eighteenth century. He wrote:

> "It plainly appears from the Words of the Statute, That one Person alone cannot be guilty of Conspiracy within the Purport of it; from whence it follows, . . . That no such Prosecution is maintainable against a Husband and Wife only, because they are esteemed but as one Person in Law, and are presumed to have but one Will." (Hawkins, Pleas of the Crown, 4th ed. 1762, Bk. I, chap. lxxii, Sect. 8, p. 192.)

The pronouncement of Hawkins apparently rests on a case in a Year Book of 38 Edward III, decided in 1365. The learning invoked for this ancient doctrine has been questioned by modern scholarship. See Williams, The Legal Unity of Husband and Wife, 10 Mod. L. Rev., 16 (1947); and cf. Winfield, The History of Conspiracy (1921), § 27, p. 64, and § 37, p. 88. But in any event the answer to Hawkins with his Year Book authority, as a basis for a decision by the Supreme Court of the United States in 1960 construing a statute enacted in 1948, was definitively made long ago by Mr. Justice Holmes:

> "It is revolting to have no better reason for a rule of law than that so it was laid down in the time of Henry IV. It is still more revolting if the grounds

upon which it was laid down have vanished long since, and the rule simply persists from blind imitation of the past." Holmes, Collected Legal Papers, 187 (1920), reprinting The Path of the Law, 10 Harv. L. Rev. 457, 469 (1897).

For this Court now to act on Hawkins's formulation of the medieval view that husband and wife "are esteemed but as one Person in Law, and are presumed to have but one Will" would indeed be "blind imitation of the past." It would require us to disregard the vast changes in the status of woman—the extension of her rights and correlative duties—whereby a wife's legal submission to her husband has been wholly wiped out, not only in the English-speaking world generally but emphatically so in this country.

How far removed we were even nearly a century ago when Congress passed the original statute against criminal conspiracy, the Act of March 2, 1867, 14 Stat. 484, from the legal and social climate of eighteenth century common law regarding the status of woman is pithily illustrated by recalling the self-deluding romanticism of Blackstone, whereby he could conscientiously maintain that "even the disabilities, which the wife lies under, are for the most part intended for her protection and benefit. So great a favourite is the female sex of the laws of England." Blackstone, Commentaries on the Laws of England (1765), Bk. I, ch. 15, p. 433. It would be an idle parade of learning to document the statement that these common-law disabilities were extensively swept away in our different state of society, both by legislation and adjudication, long before the originating conspiracy Act of 1867 was passed. Suffice it to say that we cannot infuse into the conspiracy statute a fictitious attribution to Congress of regard for the medieval notion of woman's submissiveness to the benevolent coercive powers of a husband in

order to relieve her of her obligation of obedience to an unqualifiedly expressed Act of Congress by regarding her as a person whose legal personality is merged in that of her husband making the two one.

*Reversed.*

Mr. Chief Justice Warren, with whom Mr. Justice Black and Mr. Justice Whittaker join, dissenting.

If the Court's opinion reflects all that there is to this case, it is astonishing that it has taken so many years for the federal judiciary to loose itself from the medieval chains of the husband-wife conspiracy doctrine. The problem, as the Court sees it, is almost absurdly uncomplicated: The basis for the notion that husband and wife are not subject to a conspiracy charge is that man and wife are one; but we know that man and wife are two, not one; therefore, there is no basis for the notion that husband and wife are not subject to a conspiracy charge. I submit that this simplistic an approach will not do.

The Court apparently does not assert that if the husband-wife conspiracy doctrine was widely accepted when the conspiracy statute was passed in 1867, 14 Stat. 484, and therefore was presumably within Congress' understanding of the reach of that statute, nonetheless this Court should now reject the rule because it finds it nonsensical. Instead, the Court's position is that

"It would be an idle parade of learning to document the statement that these common-law disabilities [of women] were extensively swept away in our different state of society, both by legislation and adjudication, long before the originating conspiracy Act of 1867 was passed."

But, however rapidly nineteenth century jurisprudence moved toward a recognition of the individuality of women in other areas, it is wholly inaccurate to imply that the law

of conspiracy changed apace.  In fact, the earliest case repudiating the husband-wife doctrine which the Government has been able to cite is *Dalton* v. *People*, 68 Colo. 44, 189 P. 37, which was decided, as the Government puts it, "[a]s early as 1920."  And if the doctrine is an anachronism today, as the Court says, its unusual hardiness is demonstrated by the fact that the decision of the Court represents a departure from the general rule which prevails today in the English-speaking world.  As recently as 1957, the Privy Council approved the husband-wife doctrine,[1] and other Commonwealth courts are in accord.[2] For American decisions, see Annot., 4 A. L. R. 266, 71 A. L. R. 1116, 46 A. L. R. 2d 1275.

Thus it seems clear that if the 1867 statute is to be construed to reflect Congress' intent as it was in 1867, the Court's decision is erroneous.  And I believe that we must focus upon that intent, inasmuch as there is no indication that Congress meant to change the law by the 1948 legislation which re-enacted without material variation the old conspiracy statute.[3]  Surely when a rule of law is well established in the common law and is part of the legislative purpose when a relevant statute is passed, that rule should not be rejected by this Court in the absence of an explicit subsequent repudiation of it by Congress.[4]

---

[1] *Mawji* v. *Reginam*, 41 Crim. App. R. 69, 1 All Eng. Rep. [1957] 385.

[2] See *Kowbel* v. *The Queen*, 110 Can. Crim. Cas. 47 (1954); *The King* v. *McKechie* [1926] N. Z. L. R. 1.

[3] 18 U. S. C. § 371.

[4] "There are no judgments in Canada, dealing with this particular matter, but I think it is well settled that since many centuries, it has been the law of England that a husband and wife cannot alone conspire to commit an indictable offence.  These views have been expressed during over six centuries, and I would be slow to believe that the hesitations of a few modern writers could justify us to brush

Consequently, I would be compelled to dissent whether or not I believed the rule to be supported by reason.

But more, I cannot agree that the rule is without justification. Inasmuch as Mr. Justice Holmes' observation that it is "revolting" to follow a doctrine only "from blind imitation of the past" is hardly novel, the tenacious adherence of the judiciary to the husband-wife conspiracy doctrine indicates to me that the rule may be predicated upon underlying policies unconnected with problems of women's suffrage or capacity to sue. The "definitive answer" to the question posed by this case is not to be found in a breezy aphorism from the collected papers of Mr. Justice Holmes, for "[g]eneral propositions do not decide concrete cases." [5]

It is not necessary to be wedded to fictions to approve the husband-wife conspiracy doctrine, for one of the dangers which that doctrine averts is the prosecution and conviction of persons for "conspiracies" which Congress never meant to be included within the statute. A wife, simply by virtue of the intimate life she shares with her husband, might easily perform acts that would technically be sufficient to involve her in a criminal conspiracy with him, but which might be far removed from the arm's-

---

aside what has always been considered as the existing law. . . . It may very well be amended by legislative intervention, but as long as it is not, it must be applied." *Kowbel* v. *The Queen*, 110 Can. Crim. Cas. 47, 52 (1954). (Taschereau, J.)

"Had it been the intention of Parliament to abolish the common law defence with which we are concerned it would be expected that plain words dealing expressly with such defence would have been used . . . . I can find nothing in the general words [of the statute] to warrant imputing to Parliament the intention of taking away this ancient common law defence of a husband and wife . . . ." *Id.*, at 54–55. (Cartwright, J.)

[5] *Lochner* v. *New York*, 198 U. S. 45, 76 (dissenting opinion).

length agreement typical of that crime. It is not a medieval mental quirk or an attitude "unnourished by sense" to believe that husbands and wives should not be subjected to such a risk, or that such a possibility should not be permitted to endanger the confidentiality of the marriage relationship. While it is easy enough to ridicule Hawkins' pronouncement in Pleas of the Crown [6] from a metaphysical point of view, the concept of the "oneness" of a married couple may reflect an abiding belief that the communion between husband and wife is such that their actions are not always to be regarded by the criminal law as if there were no marriage.

By making inroads in the name of law enforcement into the protection which Congress has afforded to the marriage relationship, the Court today continues in the path charted by the recent decision in *Wyatt* v. *United States,* 362 U. S. 525, where the Court held that, under the circumstances of that case, a wife could be compelled to testify against her husband over her objection. One need not waver in his belief in virile law enforcement to insist that there are other things in American life which are also of great importance, and to which even law enforcement must accommodate itself. One of these is the solidarity and the confidential relationship of marriage. The Court's opinion dogmatically asserts that the husband-wife conspiracy doctrine does not in fact protect this relationship, and that hence the doctrine "enthrone[s] an unreality into a rule of law." I am not easily persuaded that a rule accepted by so many people for so many centuries can be so lightly dismissed. But in any event, I submit that the power to depose belongs to Congress, not to this Court. I dissent.

---

[6] Hawkins, 1 Pleas of the Crown (4th ed. 1762), 192.