Christos LAGANAS et al., Petitioners,

v.

COMMISSIONER OF INTERNAL REVENUE, Respondent.

No. 5631.

United States Court of Appeals First Circuit.

Heard April 6, 1960.

Decided Aug. 16, 1960.

**732**

George C. Eliades, Lowell, Mass., and Timothy J. Driscoll, Boston, Mass., for petitioners.

Sharon L. King, Atty., Dept. of Justice, Washington, D. C., with whom Howard A. Heffron, Acting Asst. Atty. Gen., and Lee A. Jackson and Robert N. Anderson, Attys., Department of Justice, Washington, D. C., were on brief, for respondent.

Before WOODBURY, Chief Judge, and HARTIGAN and ALDRICH, Circuit Judges.

ALDRICH, Circuit Judge.

This petition to review two decisions of the Tax Court involves the application of Helvering v. Clifford, 1940, 309 U.S. 331, 60 S.Ct. 554, 84 L.Ed. 788. The taxpayer for the year 1947 is Christos Laganas hereinafter called the husband, who filed a separate return, and for the years 1948 and 1949 taxpayers are the husband and his wife, who filed joint returns. In 1946 the Christos Laganas Shoe Company (stockholdings not shown) manufactured shoes in Lowell, Massachusetts in a leased building on Jackson Street. On November 30, 1946 the husband purchased the Jackson Street property from the lessor for $75,000. $30,000 was paid by a check drawn by him on the joint account of himself and his wife in the Middlesex County National Bank. At this time the joint account included at least $30,000 deposited by the wife out of her personal earnings in the shoe factory. The size of the husband's deposits did not appear. The remaining $45,000 was advanced by the bank in consideration of a note signed by the husband secured by a first mortgage on the property. On the same day the husband executed an agreement and declaration of trust,[1] to be known as the Laganas Realty Trust and hereinafter called the trust, of which he was sole trustee, and

---

1. Termed by taxpayers a "familiar * * 'Massachusetts' or business trust with non-transferable certificates," upon which circumstance they base certain claims.

We do not consider these claims, as it is elementary that the "familiar 'Massachusetts' or business trust" has transferable shares. Mass.G.L. c. 182, § 1.

transferred the property to himself as trustee. This real estate was at all material times the sole asset of the trust. On January 6, 1947, the husband, as trustee, appointed his wife as co-trustee. The Commissioner held that all of the income of the trust was taxable to the husband as grantor, and the Tax Court affirmed his position.

We will summarize the trust's relevant provisions. In an introductory, un-numbered paragraph it is recited that the purpose of the trust is to hold and develop real estate "as a common or joint investment for the common and equal benefit of the shareholders, ratably, according to their several holdings of shares * * *." Paragraph (1) states that the husband shall be the trustee, but recognizes that there may be others, and provides that they shall hold the property as trustee or trustees under the agreement.[2] Paragraph (2) defines a shareholder as one of record, and provides that shareholders shall not have "any interest in the Trust Property itself, real or personal, and shall have no right to call for any partition * * * or * * * distribution." Paragraph (3) provides that the trustee(s) may issue additional shares for such consideration as they may determine, and that a shareholder may be a trustee. Paragraph (4) provides that the trustee(s) "shall have and exercise the exclusive management and control * * * in any manner that they shall deem for the best interests of the shareholders, with all the rights and powers of absolute owners thereof." This, and the ensuing three paragraphs, grant explicit powers, which are broad, but not more so than the powers now customarily granted to testamentary and indenture trustees.

The balance of the trust contains nothing of present interest, except the following.

"(7) (a). The Trustee (or Trustees) may declare dividends from the net income of the Trust Fund among the cestuis que trustent as when and in such amounts as he (or they) deem proper, and may distribute such portion of the surplus, in such amounts and at such times as he (or they) may deem proper."[3]

"(17) This agreement and declaration may be amended or altered, except as regards the liability of the Trustees and shareholders by the Trustees for the time being, but no alteration or amendment shall affect any person not having actual notice thereof, until a certificate of such alteration or amendment has been recorded in said Registry of Deeds, nor shall any alteration or amendment, or other action affect previously acquired rights of any third person other than shareholders hereunder."

"(19) The trust under this agreement may be terminated at any time by the trustee for the time being."

"(21) Upon the termination of the Trust under this Agreement by the expiration of time, or for any other cause, the Trustee shall liquidate the Trust property as he may deem for the best interests of the shareholders, and divide the net proceeds among the shareholders in proportion to their holdings."

Two hundred shares were issued, 20 to the husband, 20 to his wife, and 40 to each of their four minor children.

2. Elsewhere the trust provides that there should be "not more than three" trustees; that in case of death, resignation, or incapacity, vacancies shall be filled by the survivors, and that if there is more than one trustee, action by a majority for the time being shall be valid for all purposes. No special powers are given the husband as distinguished from any other trustee. We cannot accept the government's antediluvian contention that while Christos and his wife were the trustees, "Christos was clearly a majority." Cf.

United States v. Dege, 1960, 364 U.S. 51, 80 S.Ct. 1589, 4 L.Ed.2d 1563.

3. It is contended that this paragraph permits unequal distribution among shareholders. Such an interpretation would have to overcome the presumption that beneficiaries are to be treated equally, strengthened in this case by the opening recital as to equality and ratability. We are not called upon, however, to decide this question.

At the trial various facts were stipulated, and certain oral testimony was offered by taxpayers. The court disbelieved some of this testimony. We have no quarrel with that action. It found that no gift tax returns were filed, and that in each of the income tax returns the husband was described as the grantor of the Trust. It concluded that he was in fact the grantor. We do not regard this as plainly wrong.[4]

The question is, therefore, whether the income (other than that distributed to him in his capacity as shareholder) is taxable to him either under Helvering v. Clifford, supra, or under section 166 of the Internal Revenue Code of 1939.[5] As to the former, the court stated (citations and footnotes omitted):

"Considering the ability of the grantor, at least with the concurrence of his wife, to create additional trust interests which could reduce, increase or virtually eliminate the interests of the beneficiaries other than his wife, the broad and almost unrestricted powers of control expressly conferred upon the trustees, the fact that the husband's business was the tenant of the sole asset of the trust, that the trust income might have been, and in fact probably was to some extent, used to defray the grantor's legal obligations and to reduce indebtedness for which he was at least secondarily liable, and that all of the trust income was merely reallocated within the immediate family group of the grantor, we think it would be difficult to conclude that petitioner-husband could have actually considered himself the poorer by reason of the crea-tion of the trust. There was nothing to prevent the trustee-beneficiaries from greatly increasing their own shares at the expense, of course, of the other beneficiaries. And in such a case they would have no fiduciary obligation."

■ We do not find this analysis convincing. While it is true that the general question is whether the grantor has retained so large a part of the bundle of rights that in practical effect he is the owner, it is not possible to disregard the restrictions imposed by the grantor's assumption of fiduciary duties to the extent attempted by the Tax Court. It is now axiomatic in the income tax·field that state trust law governing fiduciaries is not necessarily determinative of the tax consequences, see, e. g., Wheeling Dollar Savings & Trust Co. v. Yoke, 4 Cir., 1953, 204 F.2d 410, 412, certiorari denied 346 U.S. 898, 74 S.Ct. 221, 98 L.Ed. 398; White v. Higgins, 1 Cir., 1940, 116 F.2d 312, 320, but this does not mean that the trustee's status as such can be disregarded. See United States v. Morss, 1 Cir., 1947, 159 F.2d 142. Even the Treasury recognizes that administrative powers lead to taxing the grantor on trust income only if the powers can be used to the grantor's advantage. Treas. Reg. 111, § 29.22(a)–21(e) 1946. For example, the fact that what was claimed to be the husband's business was the tenant of the trust is irrelevant. Certainly the trustee had a duty to require a fair rent for the benefit of the trust beneficiaries. McIntire v. Mower, 1910, 204 Mass. 233, 90 N.E. 567. We think the court confused those cases in which it

4. The Tax Court neglected to note that because the wife released her dower interest in the Jackson Street property on March 27, 1947, she might to that extent be regarded as a grantor. Since the parties have not raised this matter, we will assume, without further consideration, that this did not make her a grantor during the period that none of the trust income was attributable to that release.

5. "Where at any time the power to revest in the grantor title to any part of the corpus of the trust is vested—

"(1) in the grantor, either alone or in conjunction with any person not having a substantial adverse interest in the disposition of such part of the corpus or the income therefrom, or

"(2) in any person not having a substantial adverse interest in the disposition of such part of the corpus or the income therefrom,

then the income of such part of the trust shall be included in computing the net income of the grantor." Int.Rev. Code of 1939, § 166, 26 U.S.C.A. § 166.

was found significant that the trust res consisted of stock in the grantor's business. In that situation the grantor, through control of dividend policy, could control the income going to the trust. See, e. g., Chertoff v. Commissioner, 6 Cir., 1947, 160 F.2d 691. The court rightly considered actual use of trust income to discharge the grantor's duty to support his children, but we think the record gives only very weak evidence that this was actually done. Of course distribution of all of the income within the "immediate family group of the grantor" is a factor of which the Clifford case itself compels consideration. But even as to this, courts must proceed with caution lest they let it stand for more than it is, for, as has often been pointed out, the family is not the unit of taxation. United States v. Morss, supra. Finally, we have grave doubts, to say the least, that the power to issue new shares can be exercised, as the Tax Court seems to say, in a non-fiduciary capacity. The power expressly calls for consideration for new shares, and we think a court of equity would require a fair consideration.

■ However, we believe the court's decision is correct, although for another reason. Paragraph (17), supra, gave the trustees a power to amend. There is no indication that this power was limited to minor adjustments needed to carry out the purposes of the trust. See Kohnstamm v. Pedrick, 2 Cir., 1945, 153 F.2d 506, 509. Cf. Sinopoulo v. Jones, 10 Cir., 1946, 154 F.2d 648. A power to revoke is not held in a fiduciary capacity. Reinecke v. Smith, 1933, 289 U.S. 172, 53 S.Ct. 570, 77 L.Ed. 1109; Welch v. Terhune, 1 Cir., 1942, 126 F.2d 695, certiorari denied 317 U.S. 644, 63 S.Ct. 37, 87 L.Ed. 519. Even if we were to conclude that a power to amend fell short of a power to revoke, and was a fiduciary power limited to the best interests of the beneficiaries, it could not mean less than a right to vary, or "spray," the income between the beneficiaries, including the grantor. Thus, if the grantor were the sole holder of the power, he would clearly be taxable on the trust income. Stockstrom v. Commissioner, 8 Cir., 1945, 148 F.2d 491, certiorari denied 326 U.S. 719, 66 S.Ct. 23, 90 L.Ed. 425; Commissioner of Internal Revenue v. Buck, 2 Cir., 1941, 120 F.2d 775.

This brings a final question: Does the wife's 10% interest in the income and corpus of the trust constitute such a "substantial adverse interest" that her joint holding of the power to amend precludes taxing the grantor on the trust income? As to all but 10% of the income, we hold without difficulty that it does not. Cf. Camp v. Commissioner, 1 Cir., 1952, 195 F.2d 999; Commissioner of Internal Revenue v. Prouty, 1 Cir., 1940, 115 F.2d 331, 133 A.L.R. 977. A substantial adverse interest precludes taxing the grantor on the theory that the holder of the interest will be so motivated to protect his interest that he will resist any attempt by the grantor to alter the trust. See Fulham v. Commissioner, 1 Cir., 1940, 110 F.2d 916. But here the taxpayer's wife can preserve her 10% interest while joining in any redistribution of the other beneficiaries' respective shares. Thus, the grantor, with a compliant co-power-holder, can readily give himself power to spray 90% of the income as he sees fit.

The remaining 10% is another matter. It has been said that because of "family solidarity" a wife's interest in income is not truly adverse to her husband's. Altmaier v. Commissioner, 6 Cir., 1940, 116 F.2d 162, certiorari denied 312 U.S. 706, 61 S.Ct. 827, 85 L.Ed. 1138; cf. Fulham v. Commissioner, supra. However, such a concept often counters reality. Is the commissioner to investigate the existing rapport, or lack of it, between a particular taxpayer and his wife before determining the incidence of the tax? We believe that a single rule must be adopted, and that the preferable one is to assume that each wife stands on her own feet. Commissioner of Internal Revenue v. Katz, 7 Cir., 1943, 139 F.2d 107, 110; Phipps v. Commissioner, 2 Cir., 1943, 137 F.2d 141, 144. Therefore in this case the wife had an adverse interest of 10%. As to the years in which joint returns

were filed, this point is of no consequence, but as to the first year, there must be an adjustment.

Judgment will enter reversing the decision of the Tax Court for the year 1947, and affirming the decision for the years 1948 and 1949, and remanding the action for further proceedings consistent herewith.