**92**

UNITED STATES, Appellee,

v.

Tommy D. STAVELY, Sergeant First
Class U.S. Army, Appellant.

No. 65,299, CM 8801866.

U.S. Court of Military Appeals.

Argued April 23, 1991.

Decided Sept. 9, 1991.

For Appellant: *Captain Alan M. Boyd*
(argued); *Lieutenant Colonel Russell S.
Estey* (on brief); *Colonel Robert B. Kirby.*

For Appellee: *Captain Donald W.
Hitzeman* (argued); *Colonel Alfred F. Arquilla, Lieutenant Colonel Daniel J.
Dell'Orto, Captain Randy V. Cargill* (on
brief).

*Opinion of the Court*

COX, Judge:

Contrary to his pleas, appellant was convicted by a special court-martial (officer
and enlisted members) of conspiracy to
commit frauds against the United States
and making and presenting a false claim, in
violation of Articles 81 and 132, Uniform
Code of Military Justice, 10 USC §§ 881
and 932, respectively. He was sentenced
to a bad-conduct discharge, fined $2,400.00
with confinement until the fine was paid
but for no longer than 6 months, and reduction to E-1. The convening authority approved the adjudged sentence, and the
Court of Military Review affirmed the findings and sentence in a short-form opinion
dated May 24, 1990.

We consider today whether the
military judge erred to the substantial prejudice of appellant by denying defense counsel cross-examination of a government wit-

ness.[1]  We hold that he did.

On December 7, 1987, plumbers accidentally started a fire in appellant's home. The fire spread, and damage to the home was estimated at approximately $30,000.00. Some of appellant's possessions were also damaged.

This case arises after personal property damage claims were filed for $17,698.90, of which appellant received $14,103.00. Allegations were put forth by appellant's neighbor, Mrs. Maria Jaques, that appellant had purposefully damaged his belongings after the firemen left in order to inflate his claims. The Government's case relied primarily on Mrs. Jaques' testimony as to the events she witnessed. The only other evidence in support of the Government's argument was testimony from firemen who had left the scene and stated that the quarters had been "cleaned up" prior to their departure. This testimony seemed to contradict that of the appraiser who arrived the next day and found a layer of water on the floors.

The testimony of Mrs. Jaques is of key focus here. At trial, she testified that she observed appellant pulling down the ceiling, telling his son to "do" the stereo (presumably to soak it down), and also that she heard appellant's wife say "that they had put water in the microwave." Upon cross-examination, defense sought to ask Mrs. Jaques about an administrative board hearing convened to recommend whether her husband should be discharged for failure to pay debts. The judge conducted an out-of-court hearing under Article 39(a), UCMJ, 10 USC § 839(a). Defense argued that this line of questioning was directly related to

establishment of Mrs. Jaques' credibility and ability to tell the truth: she testified at her husband's hearing that she had lied to him about checks cashed with insufficient funds. The judge limited the questioning to instances where the witness had lied under similar circumstances, that is, under oath. Therefore, this precluded any questioning related to her lying to her husband about the checks. Appellant argues that the military judge erred in barring this inquiry and that such error is clearly prejudicial. We agree.

Mrs. Jaques stood as the Government's principal witness and, as such, the defense should have been afforded great latitude in their interrogation of her. Mil. R.Evid. 403, Manual for Courts–Martial, United States, 1984, allows relevant evidence unless "its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the members, or by considerations of undue delay, waste of time, or needless presentation of cumulative evidence." We conclude that the proposed line of questioning would have violated none of these standards and that the evidence is in fact highly probative.

The Government first argues that, at the time Mrs. Jaques lied, she was not under oath and that this is of grave importance because while under oath she told the truth. The Government proposes, therefore, that her credibility can only be evaluated from her actions at times where she was under oath, as under the present set of circumstances.

1.  The issues presented for review are:

I

WHETHER THE MILITARY JUDGE ABUSED HIS DISCRETION TO THE SUBSTANTIAL PREJUDICE OF APPELLANT BY DENYING DEFENSE COUNSEL CROSS–EXAMINATION OF A GOVERNMENT WITNESS CONCERNING AN ADMINISTRATIVE BOARD HEARING IN WHICH THE WITNESS ADMITTED THAT SHE HAD LIED ABOUT BAD CHECKS THAT SHE HAD WRITTEN.

II

WHETHER THE EVIDENCE IS INSUFFICIENT AS A MATTER OF LAW TO SUPPORT THE FINDINGS OF GUILTY ON CHARGE V

AND ITS SPECIFICATIONS (CONSPIRACY TO COMMIT FRAUDS AGAINST THE UNITED STATES) AND SPECIFICATION 4 OF CHARGE III (MAKING AND PRESENTING A FALSE AND FRAUDULENT CLAIM AGAINST THE UNITED STATES).

III

WHETHER THE MILITARY JUDGE COMMITTED PREJUDICIAL ERROR IN CONSIDERING TESTIMONY GIVEN BY APPELLANT'S COMPANY COMMANDER REGARDING APPELLANT'S LACK OF POTENTIAL FOR CONTINUED SERVICE IN THE UNITED STATES ARMY.

Our resolution of Issue I makes it unnecessary for us to decide Issues II and III.

We find this factor to be of little consequence considering the facts surrounding Mrs. Jaques' situation. What is crucial, however, is determining:

(1) If Mrs. Jaques *actually* lied to her husband or whether she lied under oath at the administrative discharge hearing when she testified that she had not told her husband the truth about the family finances; and

(2) If placed in a situation where her truthful testimony would affect her personal life adversely, would the fact that Mrs. Jaques was under oath, in and of itself, keep her from lying?

It is a question of fact as to whether Mrs. Jaques may have actually lied under oath, and the court members should have been permitted to make such a finding to assess her credibility, based upon *all* available evidence.

Under Mil.R.Evid. 608(b), cross-examination regarding specific instances of misconduct is at the discretion of the military judge. However, aside from the exception of Mil.R.Evid. 609 (conviction of a crime), extrinsic evidence is not permitted for the purpose of attacking or supporting the credibility of a witness unless that evidence goes to proving the existence of "[b]ias, prejudice, or any motive to misrepresent." *See* Mil.R.Evid. 608(c); *see also United States v. Trimper*, 28 MJ 460 (CMA), *cert. denied*, 493 U.S. 965, 110 S.Ct. 409, 107 L.Ed.2d 374 (1989). It should be noted that appellant claims that in this case there existed a motive to lie, specifically that Mrs. Jaques and appellant's family had never been on amicable terms, a fact aggravated by a controversy over the sale of a piece of furniture.

As was stated in *United States v. Boone*, 17 MJ 567 (AFCMR 1983), *pet. denied*, 17 MJ 438 (CMA 1984), "[W]hen such a specific act of misconduct is, in and of itself, directly probative of the witness' truthfulness, a military judge must allow it because, by definition, it is always relevant to the issue of that witness' credibility." *Id.* at 569. Such a conclusion is not limited to instances occurring while under oath. As the facts here prove, a lie outside a courtroom may be equally as probative as one made under oath. Her admission under oath is certainly probative and substantially outweighs any confusion about the lie.

Mrs. Jaques was perhaps one of the more crucial witnesses, if not the most crucial, to the Government's case. As such, the military judge should have afforded defense counsel a far wider margin for cross-examination. His failure to do so amounts to substantial prejudicial error, denying the accused a fair trial as to all the offenses. Art. 59(a), UCMJ, 10 USC § 859(a).

Because of our holding on the first issue and the fact that the case depends heavily on this matter, we do not need to address the remaining issues at this time. However, there is an interesting question arising from the conspiracy charge.[2]

**2.** Appellant was charged with conspiring with his wife and son. Whether a husband can be charged for conspiring with his family where such an enterprise involves unemancipated members is a novel question in military law. Traditionally, questions arising under this heading took the form of simply a husband and wife being involved in a conspiracy. At common law, it was believed that a husband and wife were one person in law and thus were presumed to have but one will. 15A C.J.S. Conspiracy §§ 36–37 at 731; 41 C.J.S. Husband and Wife § 5 at 304. Since the act of conspiracy involves a minimum of two persons, a husband and a wife could not form a conspiracy under the common law.

Today courts are divided as to how to deal with this issue. *See* 2 W. LaFave & A. Scott, *Substantive Criminal Law* § 6.5(g)(2) at 116 (1986). *See also United States v. Dege*, 364 U.S. 51, 80 S.Ct. 1589, 4 L.Ed.2d 1563 (1960). Most jurisdictions have taken the position that, because of the social changes which have occurred in recent decades, it would be inconsistent with modern views to uphold such a law. *See Sturiano v. Brooks*, 523 So.2d 1126 (Fla.1988); *Burns v. Burns*, 518 So.2d 1205 (Miss.1988); *Christie v. Maxwell*, 40 Wash.App. 40, 696 P.2d 1256 (1985); *McCracken v. Government Employees Ins. Co.*, 284 S.C. 66, 325 S.E.2d 62 (1985); *R. & E. Builders, Inc. v. Chandler*, 144 Vt. 302, 476 A.2d 540 (1984); *State v. Infinito*, 180 N.J.Super. 75, 433 A.2d 816 (A.D.1981); *State v. Smith*, 401 So.2d 1126 (Fla.App. 5 Dist.1981); *Commonwealth v. Lawson*, 454 Pa. 23, 309 A.2d 391 (1973); *People v. Pierce*, 61 Cal.2d 879, 40 Cal. Rptr. 845, 395 P.2d 893 (1964); and *Marks v.*

The decision of the United States Army Court of Military Review is reversed. The findings and sentence are set aside. The record of trial is returned to the Judge Advocate General of the Army. A rehearing may be ordered.

Chief Judge SULLIVAN and Senior Judge EVERETT concur.

---

*State,* 144 Tex.Crim.R. 509, 164 S.W.2d 690 (1942). These authorities agree with the Supreme Court of Kansas that events such as enactment of the Married Women's Act, 23–201 and 23–203, K.S.A., and even Article 15, § 6 of the Kansas Constitution make "the concept of unity of husband and wife ... no longer" useful. *See, e.g., Flagg v. Loy,* 241 Kan. 216, 734 P.2d 1183, 1186 (1987). Nonetheless, some authorities speak of the natural state of a wife's submissiveness to her husband and conclude that, because of such natural state, the wife, lacking a will of her own, could not possibly formulate the necessary criminal state to be guilty of conspiring with her husband.

These questions, however, were not litigated by the parties and, therefore, need not be decided at this time.