# UNITED STATES COAST GUARD COURT OF CRIMINAL APPEALS
## Washington, D.C.

## UNITED STATES

### v.

## Albert (NMN) STELLON, Jr.,
### Food Service Specialist Second Class (E-5), U.S. Coast Guard

## CGCMG 0216

## Docket No. 1264

## 25 October 2007

General Court-Martial convened by Commander, First Coast Guard District. Tried at Boston, Massachusetts, on 9-16 December 2005.

| | |
|---|---|
| Military Judge: | CAPT Brian M. Judge, USCG |
| Trial Counsel: | LCDR Luke M. Reid, USCG |
| Assistant Trial Counsel: | LT Lisa M. LaPerle, USCGR |
| Civilian Defense Counsel: | J. Drew Segadelli, Esquire |
| Detailed Defense Counsel: | LT James M. Toohey, JAGC, USNR |
| Appellate Defense Counsel: | LCDR Necia L. Chambliss, USCGR |
| Assistant Appellate Defense Counsel: | LCDR Nancy J. Truax, USCG |
| | LT Robert M. Pirone, USCG |
| Appellate Government Counsel: | LT Donna D. Leoce, USCG |

## BEFORE
## McCLELLAND, FELICETTI & TUCHER
### Appellate Military Judges

McCLELLAND, Chief Judge:

Appellant was tried by general court-martial composed of members. Contrary to his pleas, he was convicted of one specification of rape, in violation of Article 120, Uniform Code of Military Justice (UCMJ). The court sentenced Appellant to a bad-conduct discharge, confinement for five years, and reduction to E-1. The Convening Authority approved the sentence as adjudged and suspended confinement in excess of fifty-seven months for thirty months from the date of his action. He also credited fourteen days of confinement in accordance with *United States v. Allen*, 17 M.J. 126 (C.M.A. 1984).

Before this Court, Appellant has assigned one error:

That the military judge abused his discretion in limiting the evidence of specific instances of misconduct that was directly probative of the rape victim's truthfulness under Military Rule of Evidence (M.R.E.) 608(b) when he refused to allow the defense to elicit all the details of a later false allegation of rape, and denied Appellant his Sixth Amendment right to confrontation when he prevented defense from confronting the victim with the same impeachment evidence and offering its own impeachment evidence that was admissible under M.R.E. 608(c) and 412.

This assignment was orally argued to the Court on 18 July 2007. We find no error and affirm.

## Facts

Appellant and AD were among the attendees of a party at the Otis Air Force Base recreation center on 30 August 2002. AD gave Appellant a ride home. They had intercourse in a bedroom of Appellant's government quarters, after which they returned to the party. A friend of AD noticed that she appeared to be upset and asked her what was wrong; she revealed her underwear, which had been ripped. This led to the police being called; AD went to the hospital and was interviewed by a police officer, and the next morning, Appellant was arrested. In an interview with the police, Appellant admitted to having intercourse with AD at his quarters, but initially asserted that it was consensual. He admitted that he had broken the zipper on her jeans, and upon being challenged on weaknesses in his story, admitted that he had raped her.

On 30 April 2004, AD had consensual intercourse in her car with a man she had just met at a party, to whom she was giving a ride home. On 4 May 2004, AD reported to the police that she had been raped four days earlier, and gave a detailed statement of the incident, including creation of a composite sketch of her assailant. As part of her story, she stated that the assailant had ripped her underwear, and the police recovered the putative ripped underwear from her trash. This report, she admitted at trial, was untruthful in all its particulars. A day or two after her report, when the investigating police officer confronted her with evidence that conflicted with the report, she recanted it, whereupon the police officer advised her that if she was fabricating the story, she could be charged with filing a false statement. As to the ultimate reason for reporting rape, she explained, "I realized [after the fact] I didn't want it [the intercourse in the car] to happen."

**United States v. Albert (NMN) STELLON, Jr., No. 1264 (C.G.Ct.Crim.App. 2007)**

## Issues

Appellant argues that the military judge erred in not allowing him to fully cross-examine AD on her false story to the police in 2004 beyond a few of its details, that it was false, and that she only recanted when confronted with conflicting evidence; and in not admitting the composite sketch. Further, Appellant argues, it was error to exclude evidence from the police officer concerning the ripped underwear and the underwear itself.

Appellant also argues that the military judge should have allowed him to elicit the fact that AD had been told she could be charged with filing a false statement.

## Complainant's False Story

Evidence concerning AD's 2004 false report was admissible under M.R.E. 608(b), which reads in pertinent part:

> *Specific instances of conduct.* Specific instances of the conduct of a witness, for the purpose of attacking or supporting the witness' character for truthfulness, . . . may not be proved by extrinsic evidence. They may, however, in the discretion of the military judge, if probative of truthfulness or untruthfulness, be inquired into on cross-examination of the witness . . . .

> M.R.E. 608(b) operates as an exception to M.R.E. 404, which reads in pertinent part:

> (a) *Character evidence generally.* Evidence of a person's character or a trait of character is not admissible for the purpose of proving action in conformity therewith on a particular occasion, except:
>     . . . .
>       (3) *Character of witness.* Evidence of the character of a witness, as provided in Mil. R. Evid. 607, 608, and 609.
> (b) *Other crimes, wrongs, or acts.* Evidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show action in conformity therewith. . . .

Together, M.R.E. 404 and 608(b) maintain the longstanding rule that evidence of prior misconduct (including false statements) of a witness may be presented to impeach the witness, but only by cross-examination of that witness. *See United States v. Veilleux*, 1 M.J. 811, 814 (A.F.C.M.R. 1976); *United States v. Grant*, 27 C.M.R. 683, 693 (A.B.R. 1959); Fed. R. Evid. 608(b) advisory committee's note (1972 Proposed Rules).

The military judge exercised his discretion under M.R.E. 608(b) to allow cross-examination of AD concerning her 2004 false report. However, he limited the cross-examination, saying, "I don't see any reason for us to try the extent of her lie to the members here, unless you have some other theory" (R. at 618); "I don't want to try an entire case about her lies" (R. at 625). He invoked M.R.E. 403, holding, "to continue with all the details of this – of the report of rape will tend to lead us into issues which are going to lead to confusion of the issues, potentially misleading the members and certainly possible undue delay and waste of time and, specifically, cumulative evidence, because already a number of the details of the report have already come out." (R. at 621.)

Appellant's argument is founded on the Sixth Amendment right to confrontation. Clearly, that right bounded the military judge's discretion under M.R.E. 608(b). It was entirely proper that Appellant was allowed to cross-examine AD concerning the 2004 false report. *United States v. Stavely*, 33 M.J. 92, 94 (C.M.A. 1991). On the other hand, as Appellant concedes, the right to confrontation is not absolute. "[T]rial judges retain wide latitude insofar as the Confrontation Clause is concerned to impose reasonable limits on such cross-examination based on concerns about, among other things, harassment, prejudice, confusion of the issues, the witness' safety, or interrogation that is repetitive or only marginally relevant. And as we observed earlier this Term, 'the Confrontation Clause guarantees an *opportunity* for effective cross-examination, not cross-examination that is effective in whatever way, and to whatever extent, the defense might wish.'" *Delaware v. Van Arsdall*, 475 U.S. 673, 679 (1986) (internal citation omitted).

Contrary to Appellant's argument, we find no abuse of discretion by the military judge in limiting the details of AD's 2004 false report, including the composite sketch. The record reveals that the military judge conscientiously evaluated the accused's right to present material evidence to impeach AD under M.R.E. 608(b) and 403. He allowed the defense some cross-examination of AD and testimony by police investigators on the details of the 2004 complaint, in addition to AD's admission that she had, in fact, filed such a false report with police.

As for evidence of the ripped underwear from 2004, AD had testified about it during cross-examination concerning her false report (R. at 600), and it appears in Defense Exhibit D, her 2004 written statement. When the defense later offered the underwear itself and the police officer's testimony about it (R. at 801-02), the military judge excluded the evidence, at least partly under

M.R.E. 412 as evidence of other sexual behavior. We find his invocation of M.R.E. 412 strained, but we see no basis for admitting the underwear evidence. According to counsel, that evidence would bear on AD's credibility. The association of ripped underwear with a report of rape by AD was a point the 2002 and 2004 reports had in common. In other words, as Appellant puts it now, since she lied in 2004 when she told a story that included ripped underwear, the members should infer that she had lied in 2002 when she told a story that included ripped underwear. This point was conveyed during defense counsel's closing argument, using the evidence that had been admitted. Further evidence of the ripped underwear to support this theory, in our view, runs afoul of M.R.E. 404(b): evidence of her act in 2004 "is not admissible . . . in order to show action in conformity therewith" in 2002; and the M.R.E. 608(b) exception does not reach the police officer's testimony or the underwear itself because that evidence would be extrinsic evidence. The evidence was excludable on this basis.[1]

### Threat of Prosecution

When the investigating police officer confronted AD with evidence that conflicted with her 2004 report of rape, she recanted it, whereupon the police officer advised her that if she was fabricating the story, she could be charged with filing a false statement. (Appellate Ex. XVII at 4.)[2] With this knowledge, AD arguably had a motive to testify falsely at trial in 2005. That is, if her 2002 report of rape was false, she had a motive to maintain her false story at trial. Although Appellant did not specifically preserve this issue at trial, he now urges it as a reason to reverse.

M.R.E. 608(c) reads:

*Evidence of bias.* Bias, prejudice, or any motive to misrepresent may be shown to impeach the witness either by examination of the witness or by evidence otherwise adduced.

We agree that M.R.E. 608(c) could provide a basis for admission of evidence that AD had been advised that she could be charged with filing a false statement.

---

[1] Admission of the evidence, particularly of the underwear itself, could well have misled the members and resulted in confusion of the issues.

[2] The record reflects that a letter was received from the District Attorney to the effect that prosecution of AD was not contemplated. (Appellate Ex. X at 4; R. at 20, 68, 234.) The letter is not in the record. The military judge discussed this with AD outside the members' presence, pointing out that prosecution was still a possibility and she retained the right under the Fifth Amendment not to incriminate herself by her testimony. He asked if she was testifying freely and voluntarily; she responded in the affirmative. (R. at 234-35, 533.)

At the point during trial when the defense offered the police officer's testimony concerning the underwear (R. at 801-02) and the military judge disallowed it, counsel proffered the police officer's testimony covering his entire conversation with AD at that time, including "That's a false police report. You could subject yourself to problems." (R. at 807.) However, counsel did not cite or implicate M.R.E. 608(c), or any other basis for admission of the evidence other than the basis upon which he had already offered the underwear. We have not discovered any place in the trial record where the issue was raised. Defense counsel did mention M.R.E. 608(c) at the time of cross-examination of AD (R. at 612), but he did not develop it; he said he would return to the point, but he never did. The military judge responded to the mention of M.R.E. 608(c), ruling that the 2004 incident did not show motive to misrepresent in 2002, or bias or prejudice against Appellant (R. at 620-21). This would have been counsel's opportunity to redirect the military judge's attention to AD's motive to misrepresent at trial, but he did not do so. Under these circumstances, we find no error in the military judge's ruling against further testimony by the police officer.[3]

## Decision

We have reviewed the record in accordance with Article 66, UCMJ. Upon such review, the findings and sentence are determined to be correct in law and fact and, on the basis of the entire record, should be approved. Accordingly, the findings of guilty and the sentence, as approved and partially suspended below, are affirmed.

Judges FELICETTI and TUCHER concur.



For the Court,

Jane R. Lim
Clerk of the Court

---

[3] We find unpersuasive Appellant's additional contention on appeal that the details and extent of AD's 2004 false statements and the underwear evidence enhance the motive to testify falsely because the size of the 2004 lie increased AD's jeopardy if she lied about 2002.